FIRST DIVISION
FEBRUARY 04, 2008

No. 1-07-0760

| | | |
|---|---|---|
| GREENWICH INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| RPS PRODUCTS, INC., | ) | No. 05 CH 09418 |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (The Holmes Group, Inc., | ) | Honorable |
| | ) | Sophia H. Hall, |
| Defendant). | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

The issue presented in this case is whether plaintiff Greenwich Insurance Company (Greenwich) had a duty to defend its insured, defendant RPS Products, Inc. (RPS), in an underlying suit filed by The Holmes Group, Inc. (Holmes), alleging, among other things, patent infringement, trademark infringement, and unfair competition. On August 4, 2004, RPS tendered its defense of the Holmes suit to Greenwich, which refused the tender of the defense and denied coverage on August 17, 2004. On June 2, 2005, Greenwich filed a complaint for declaratory judgment in the chancery division of the circuit court of Cook County seeking, among other things, a declaration that it had no

duty to defend RPS in the Holmes suit. On October 31, 2006, the trial court granted Greenwich's motion for summary judgment finding that the Holmes suit was not covered under the Greenwich insurance policy, and therefore had no duty to defend.

**1. The Underlying Lawsuit**

RPS is an Illinois corporation that manufactures, markets, distributes, and sells replacement filters for use in air cleaners and humidifiers. One of RPS's replacement filters, the RPS model H600 filter, was marketed as a filter that "fit Holmes " "Harmony Air Purifier Models: HAP 615, 626, 650, 675, 675RC."

On November 27, 2002, Holmes notified RPS that it was making a claim against it based on RPS' alleged infringement of Holmes' patent for its "HAPG 600 Harmony Air Filter." On July 3, 2003, Holmes filed its original complaint against RPS in the United States District Court for the Worchester District of Massachusetts.

On July 28, 2003, RPS provided Greenwich with Holmes' original complaint. On the same date, Greenwich informed RPS that there was no coverage under the Greenwich insurance policy for patent infringement, and Greenwich issued a formal denial of coverage shortly thereafter. RPS did not dispute Greenwich's denial of coverage at that point in time.

On February 19, 2004, Holmes provided RPS with its proposed amended complaint. On March 3, 2004, Holmes filed its amended complaint. The amended complaint includes the following relevant allegations as to all three counts contained in the complaint:

"8. RPS manufacturers, markets, distributes and/or sells replacement filters for use in air cleaners and humidifiers. One of those replacement filters is designated as the RPS model H600 filter (the 'H600 Replacement Filter').

9. The H600 Replacement Filter is marketed and advertised by RPS as a replacement filter for certain Holmes air cleaner models. The label on the H600 Replacement Filter box prominently displays the claim that it 'Fits Holmes ,' and lists the following Holmes Harmony Air Purifier Models: HAP 615, 625, 650, 675, 675RC. This designation is literally false because the RPS Replacement Filters do not meet Holmes performance standards, a high proportion of the RPS Replacement Filters are defectively manufactured and, when the RPS Replacement Filters are placed in one of the Holmes machines that they purportedly 'fit', the RPS filter will not allow the door to close.

* * *

13. When the RPS H600 Replacement Filters are substituted for the genuine Holmes filters in those Holmes Harmony Air Purifier models which RPS claims that the RPS H600 Replacement Filter 'Fits,' each of the Holmes models substantially and materially underperforms *** .

14. As a result, consumers who purchase a RPS H600 Replacement Filer believing that it 'Fits Holmes' are misled into thinking that the H600 Replacement Filter is a suitable replacement for the proper Holmes   filter when it is not *** .

* * *

19. RPS misrepresents the RPS H600 Replacement Filter on its Web site as a 'Holmes air filter for HEPA models HAP615, 625, 650, 675, 675 RC, (HAP-600).' "

Count I further alleges that RPS infringed Holmes' patent by "making, using, offering to sell, selling, and/or importing and/or inducing and/or contributing to others' making, using, offering to sell, selling and/or importing products that embody or use the inventions claimed in the patent."  Count II of the amended complaint, entitled "Unfair Competition," alleges RPS advertises and sells its H600 replacement filter as "Fits Holmes   HEPA Air Cleaners Models: HAP 615, 625, 650, 675, 675RC," the replacement filters "are not acceptable *** for use with Holmes air cleaners," and RPS replacement filter packaging and nationwide advertising contain false and misleading statements and descriptions concerning replacement air filter applications, contain misrepresentations of fact, and constitute unfair competition in violation of section 1125 of the United States Trademarks Act (15 U.S.C. §1125 (a) (2000)), and the laws of Massachusetts.  Count III of the amended complaint, entitled "Trademark Infringement" alleges RPS' use of the mark "Holmes   " in commerce and in connection with the

4

marketing and advertisement of RPS' own replacement filters constitutes trademark infringement.

**2. The Greenwich Policy**

RPS solicited A.F. Crissie & Company, Ltd., an insurance brokerage firm, to procure, on its behalf, commercial liability insurance coverage. Ray Szydlo of A.F. Crissie, caused RPS to be placed with Greenwich for purposes of obtaining a commercial liability insurance policy. Greenwich issued to RPS three consecutive one-year commercial general liability policies covering the December 31, 2001, through December 31, 2004, time period. The policy at issue in this case, policy No. GEC001084802, covered the December 31, 2003, through December 31, 2004, time period. The policy provided in pertinent part:

"SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages *** .

* * *

COVERAGE B PERSONAL AND ADVERTISING LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.

* * *

c. This insurance applies to 'personal and advertising injury' caused by an offense arising out of your business *** .

* * *

2. Exclusions

This insurance does not apply to:

a. Knowing Violation of Rights Of Another

'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'.

b. Material Published With Knowledge Of Falsity

'Personal and advertising injury' arising out of oral and written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

* * *

g. Quality Or Performance Of Goods – Failure To Conform To Statements

'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statements of quality of performance made in your 'advertisement'.

* * *

i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan.

* * *

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

* * *

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the 'occurrence' or offense.

a. If a claim is made or 'suit' is brought against any insured, you must:

(1) Immediately record the specifics of the claim or 'suit' and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

a. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit'; [and]

* * *

(3) Cooperate with us in the investigation or

settlement of the claim or defense against the 'suit' *** .

SECTION V – DEFINITIONS

1. 'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purpose of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered advertisement.

* * *

13. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. 'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses

* * *

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

* * *

b. The use of another's advertising idea in your "advertisement"; or

c. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

***

2. 'Property damage' means:

a. Physical injury to tangible property, including all resulting loss of use to that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it *** ."

### 3. Notice and Tender of Defense

RPS was served with the amended complaint on February 19, 2004. It provided Holmes' amended complaint to Greenwich on August 4, 2004.

### 4. The Declaratory Judgment Action

Greenwich filed the instant action, seeking a declaration that its policy provided no coverage to RPS for the Holmes action. Greenwich argued that Holmes' amended complaint did not come within the coverage provided by the policy and that RPS did not comply with the policy's notice terms. RPS answered Greenwich's complaint and filed a

counterclaim for declaratory judgment. Both parties filed motions for summary judgment. The trial court granted Greenwich's motion for summary judgment on October 31, 2006, and denied RPS' motion. This timely appeal followed.

ANALYSIS

As previously noted, this appeal was taken from the trial court's grant of summary judgment in favor of Greenwich and against RPS. "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Gawryk v. Firemen's Annuity & Benefit Fund*, 356 Ill. App. 3d 38, 41 (2005). Where, as here, "the parties have filed cross-motions for summary judgment, they agree that no genuine issue as to any material fact exists and that only a question of law is involved, and they invite the court to decide the issue based on the record." *Gawryk*, 356 Ill. App. 3d at 41. We review a trial court's ruling on a motion for summary judgment *de novo*. *Gawryk*, 356 Ill. App. 3d at 41.

RPS claims that the trial court erred by granting Greenwich's motion for summary judgment where the insurance policy in question establishes that Greenwich had a duty to defend RPS in the Holmes suit.

Initially, we note that in Illinois, the duties to defend and to indemnify are not coextensive, the obligation to defend being broader than the obligation to pay. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App.

11

3d 361 (1988). In determining whether an insurer has a duty to defend its insured, a court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine*, 154 Ill. 2d at 108. However, if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, an insurer may properly refuse to defend. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991), quoted in *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993). "[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367. "[W]here the language of an insurance policy is clear and unambiguous, it will be applied as written." *Hatherley*, 250 Ill. App. 3d at 337. The construction of an insurance policy presents a question of law that is reviewed *de novo*. *Outboard Marine*, 154 Ill. 2d at 108.

RPS firstly argues that the Greenwich policy provided coverage for count I of Holmes' amended complaint, which alleges patent infringement. On appeal, RPS argues that coverage extends by virtue of the policy's "BODILY INJURY AND PROPERTY DAMAGE LIABILITY" clause, which reads: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property

12

damage' to which this insurance applies *** ."  RPS argues that a patent is "property" and that infringement of a patent is "damage," leading RPS to the conclusion that coverage extends for Holmes' underlying patent infringement cause of action.  "Property damage" is defined in the Greenwich policy as: "Physical injury to tangible property, including all resulting loss of use to that property *** ."

RPS did not raise this argument at the trial level and has thus waived the argument for appellate review. *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1019 (2006).  Furthermore, RPS cites no authority for the proposition that infringing upon a patent constitutes "property damage."  The failure to cite authority also constitutes waiver of an argument. *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d  459, 465 (2007), citing 210 Ill. 2d R. 341(h)(7) (arguments presented without citation to authority are waived).

Even had RPS not waived the argument, it still fails.  The policy specifically defines "property damage" as "physical injury to tangible property."  It is black letter law that patent rights encompass intangible, incorporeal rights.  See *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 556, 123 L. Ed. 2d 288, 300, 113 S. Ct. 1670, 1676 (1993).  As a patent is not tangible property subject to physical damage, patent infringement cannot fall within the definition of "property damage" under the Greenwich policy.

RPS then argues that count I of Holmes' amended complaint, alleging patent infringement, comes within the policy's "PERSONAL AND ADVERTISING

13

LIABILITY" clause. RPS contends that its act of advertising infringing products falls within the definition of advertising injury as contained in the Greenwich policy. The recent case of *Global Computing, Inc. v. Hartford Casualty Insurance Co.*, No. 05 C 6753 (N.D. Ill., March 14, 2007), is instructive. In *Global Computing*, Judge William J. Hibbler of the United States District Court for the Northern District of Illinois noted that one Illinois appellate court and two federal district courts for the Northern District of Illinois have held that something more than the mere advertisement of an infringing product is required to bring such action within the scope of coverage. *Global Computing, Inc.*, slip op. at 8, citing *Konami (America), Inc. v. Hartford Insurance Co.,* 326 Ill. App. 3d 874, 880 (2002); *Winklevoss Consultants, Inc. v. Federal Insurance Co.*, 991 F. Supp. 1024, 1032-33 (N.D. Ill. 1998); *Davila v. Arlasky*, 857 F. Supp. 1258, 1262-63 (N.D. Ill. 1994). The advertisement must instruct or explain to the purchaser exactly how to recreate or reassemble the product into one that infringes a patent. *Konami (America), Inc.*, 326 Ill. App. 3d at 880. Count I of Holmes' amended complaint (that RPS manufactured and sold allegedly infringing products) does not allege that RPS provided any detailed instructions to its customer on how to infringe the patent. RPS' argument is, therefore, unpersuasive.

Furthermore, patent infringement is specifically excluded from the definition of "Personal and advertising injury" under the "PERSONAL AND ADVERTISING LIABILITY" clause in the Greenwich policy. As noted, "where an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt

14

because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367. Comparing the language of count I of the underlying complaint at issue in this declaratory action, it is clear that the patent infringement exclusion applies and that Greenwich had no duty to defend RPS by virtue of count I of Holmes' amended complaint.

RPS then contends that counts II and III of Holmes' amended complaint come within the "PERSONAL AND ADVERTISING LIABILITY" clause in the Greenwich policy. The parties agree on how advertising injury coverage can be triggered. There are three elements: (1) RPS must have been engaged in advertising activity during the policy period when the injury occurred; (2) Holmes' allegations must raise a potential for liability under one of the offenses listed in the policies; and (3) there must be a causal connection between the alleged injury and the advertising activity. *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 137 (2001). As noted, count II of the amended complaint, entitled "Unfair Competition," alleges RPS advertises and sells its H600 replacement filter as "Fits Holmes    HEPA Air Cleaners Models: HAP 615, 625, 650, 675, 675RC," the replacement filters "are not acceptable *** for use with Holmes air cleaners," and RPS replacement filter packaging and nationwide advertising contain false and misleading statements and descriptions concerning replacement air filter applications, contain misrepresentations of fact, and constitute unfair competition in violation of 15 §1125, U.S.C. §1125(a)(2000)) and the laws of Massachusetts. Count III of the amended complaint, entitled "Trademark

Infringement", alleges RPS' use of the mark "Holmes " in commerce and in connection with the marketing and advertisement of RPS' own replacement filters constitute trademark infringement. Before we begin our analysis, we note that this court has previously stated that "[w]e give little weight to the legal label that characterizes the underlying allegations. Instead, we determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Lexmark International, Inc.*, 327 Ill. App. 3d at 135-36. For ease of discussion, we consider Holmes' counts II and III together where applicable, and separately when not.

To satisfy the advertising activity requirement for counts II and III, RPS points to the allegation that it advertised the RPS H600 replacement filter on its website. The definition of "Advertisement" in the Greenwich policy includes the following:

"a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For purpose of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered advertisement."

We find that the allegation contained in Holmes' amended complaint, that RPS advertised its products for sale on its website, falls within the definition of "Advertisement" contained in the Greenwich policy.

At this point in our opinion, the analysis of whether counts II and III fall within the policy's coverage must be considered separately. We begin with count II of Holmes' amended complaint, entitled "Unfair Competition."

As noted, in addition to showing that it was engaged in advertising activity during the policy period, RPS must show that (1) Holmes' allegations raise a potential for liability under one of the offenses listed in the policy, and (2) there is a causal connection between the alleged injury and the advertising activity, in order to succeed in its claim.

In support of its argument, RPS cites the Uniform Deceptive Trade Practices Act (Act) (815 ILCS 510/2 (West 2007)). We note, however, that any citation to this Illinois Act is inapposite as the underlying complaint alleges that RPS engaged in unfair competition in violation of Section 1125 (15 U.S.C. §1125(a) (2000)) and the laws of Massachusetts.

 In any event, we find that the allegations of count II of Holmes' amended complaint do not come within one of the offenses listed in the Greenwich policy. "Personal and advertising injury" is defined in the Greenwich policy as follows:

> " 'Personal and advertising injury' " means injury, including consequential 'bodily injury', arising out of one or more of the following offenses

* * *

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

* * *

b. The use of another's advertising idea in your "advertisement"; or

c. Infringing upon another's copyright, trade dress or slogan in your " 'advertisement.' "

* * *

Nowhere in the definition of "Personal and advertising injury" contained in the Greenwich policy is "unfair competition" found. Therefore, to succeed on its claim, RPS must show that Holmes' allegations contained in count II fit into one of the aforementioned offenses listed in the policy.

The allegations contained in count II of the Holmes' amended complaint do not disparage Holmes' products for purposes of "advertising injury." "Disparagement has been defined as 'words which criticize the quality of one's goods or services.' " *Lexmark International, Inc.*, 327 Ill. App. 3d at 140, quoting *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 877 (1978). Nowhere in the underlying complaint does Holmes claim that RPS criticized the quality of Holmes' air filters.

We also find that count II of Holmes' amended complaint does not allege that RPS used Holmes' "advertising idea." " '[M]isappropriation of advertising ideas or style of doing business' encompasses trade dress infringement claims." *Lexmark International, Inc.*, 327 Ill. App. 3d at 139, citing *B.H. Smith, Inc. v. Zurich Insurance Co.*, 285 Ill. App. 3d 536, 539-40 (1996).

"The trade dress of a product is essentially 'its total image and overall appearance." *Lexmark International, Inc.*, 327 Ill. App. 3d at 139, citing *Blue-Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989). "The total image of a product 'may include features such as size, shape, color or other combinations, texture, graphics, or even particular sales techniques.' " *Lexmark International, Inc.*, 327 Ill. App. 3d at 139, citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). Trade dress recognizes that the "design or packaging of a product may acquire a distinctiveness which serves to identify the product [by the consumer] with its manufacturer or source." *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28, 149 L. Ed. 2d 164, 172, 121 S. Ct. 1255, 1259 (2001). "[ A] design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress, which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods." *Traffix Devices, Inc.*, 532 U.S. at 28, 149 L. Ed. 2d at 172, 121 S. Ct. at 1259. Holmes alleges no trade dress infringement in its complaint.

We also find that count II of Holmes' amended complaint does not allege that RPS infringed upon Holmes' "copyright, trade dress or slogan" in it advertisement.

For the foregoing reasons, we find that count II of Holmes' amended complaint does not come within the coverage provided by the Greenwich policy.[1]

We now consider whether Count III of Holmes' amended complaint comes within the definition of "advertising injury" contained in the Greenwich policy. As noted, count III alleges that RPS infringed upon Holmes' trademark by use of the mark "Holmes " in its advertisement.

Not only does trademark infringement not come within the enumerated offenses listed by the policy at issue, trademark infringement is specifically excluded from coverage under the Greenwich policy. As noted, "where an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367. Comparing the language of count III of Holmes' amended complaint, it is clear that the trademark exclusion operates to bar coverage in the case at bar.

Nevertheless, RPS argues that coverage under the Greenwich policy extends to count III of Holmes' amended complaint by positing the following question to this court:

---

[1] Because it does not argue the point in its brief to this court, RPS also necessarily concedes that the cause of action of fraudulent misrepresentation does not come within coverage of the Greenwich policy.

"[H]ow could a policy cover 'trade dress' advertising injuries and not, at the same time, cover 'trademark' advertising injuries?"  The answer to RPS' inquiry lies in the fact that trade dress infringement and trademark infringement are two different causes of action. See *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1182 (7th Cir. 1989) ("[a] product's *trade dress* is the overall image used to present it to its purchasers *** . [Citation.]  *A trademark* is thought of as something more specific, such as a logo" (emphasis in original)).  We therefore find RPS' argument unpersuasive.

Having already determined that Holmes' amended complaint does not come within the terms of the Greenwich insurance policy for coverage, we need not consider the question of whether RPS' tender of defense was untimely under the policy.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON and GARCIA, JJ., concur.