**MARVIN J. PERRY, INC. Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE COMPANY, Defendant.**

Civil Case No. RWT 08–138.

United States District Court, D. Maryland.

May 19, 2009.

Clifton Merritt Mount, Jackson and Campbell PC, Washington, DC, for Plaintiff.

James A. Rothschild, Gregory L. Vangeison, Michael J. Carlson, Anderson Coe and King LLP, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

## I. BACKGROUND

Plaintiff Marvin J. Perry, Inc. ("MJP") filed this insurance coverage action on December 10, 2007, in the Circuit Court for Montgomery County (later removed to this Court), to recover the fees and costs it

incurred in defending a lawsuit[1] filed against it in this Court on November 18, 2005 by Perry & Wilson, Inc. d/b/a Marvin J. Perry & Associates (hereinafter "P & W"). In the underlying suit, P & W alleged that it had acquired the trade name and trademark of "Marvin J. Perry & Associates" through a purchase agreement with MJP in 1993 and that MJP's continued use of the name and mark after the sale violated P & W's common law and federal statutory rights. *Id.*

Prior to the *P & W* suit, Defendant the Hartford Casualty Insurance Company ("the Hartford") issued a Business Liability Coverage Policy No. 42–SBAKZ2477[2] ("Policy") to MJP for the October 1, 2004 through October 1, 2005 period. *See* Def.'s Mot. Summ. J. Ex. 5 (Copy of Policy and Exclusions). The Policy provided third-party liability coverage subject to certain conditions and exclusions. *Id.*

On September 1, 2006, MJP notified the Hartford of the *P & W* suit. On November 16, 2006, after conducting its investigation, the Hartford expressed to MJP its view that it was relieved of its duty to defend due to certain exclusions under the Policy. *See* Def.'s Mot. Summ. J. Ex. 9. The Hartford and MJP corresponded further by letter, on December 4 and 13, 2006. *Id.* Exs. 10 & 11.

In the underlying *P & W* suit, the United States District Court for the District of Maryland (Northern Division) entered an order of dismissal on January 12, 2007, due to P & W and MJP's settlement agreement. MJP now seeks to recover its fees and costs incurred in the defense of the *P & W* suit.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir.2006). A dispute of material fact is genuine if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another. *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

The Court may rely upon only those facts that are supported by the record—not simply assertions in the pleadings—in order to fulfill its affirmative obligation to prevent factually unsupported claims or defenses from proceeding to trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmovants, and all justifiable inferences are to be drawn in their favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

---

1. The underlying lawsuit filed by P & W against MJP was captioned *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.,* Civil No. 8:05–cv–3126–MJG. *See* Def.'s Mot. Summ. J. Ex. 3 (Complaint for *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.,* Civil No. 8:05–cv–3126–MJG) (hereinafter *"P & W* suit" or "underlying suit").

2. Over the time period that the Hartford issued policies to MJP, it used two Business Liability Coverage Forms. These forms were Form SS 00 08 04 01 and Form SS 00 08 04 06, which are identical in terms of the Policy and Exclusion language considered and quoted in this case. *See* Def.'s Mot. Summ. J., Exs. 5 & 6.

## B. Applicable Maryland Law

This case involves not the question of the obligation to indemnify but, rather, the question of the duty to defend. These are two significantly different questions under Maryland law, which governs the dispute before the court.

Under Maryland law, an insurer's duty to defend is a contractual duty arising out of terms of the liability insurance policy, and it is broader than the duty to indemnify. *Litz v. State Farm Fire & Cas. Co.,* 346 Md. 217, 695 A.2d 566, 569 (1997). The insurer has a duty to defend its insured for all claims that are potentially covered. *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 850 (1975).

Even if a plaintiff does not allege facts that clearly bring the claim within policy coverage, the insurer must still defend if there is a potentiality that the claim could be covered by the policy. *Walk v. Hartford Cas. Ins. Co.,* 382 Md. 1, 852 A.2d 98, 106 (2004). This requires the Court to make a two-part inquiry. *St. Paul Fire & Marine Ins. v. Pryseski,* 292 Md. 187, 438 A.2d 282, 285 (1981). First, what is the coverage and what are the defenses under the terms of the insurance policy? *Id.* Second, do the allegations in the underlying tort action potentially bring the tort action within the policy coverage? *Id.*

■ Maryland has historically and typically followed what is referred to by some commentators as "the eight corners rule." *Id.* This rule requires the Court to consider only the underlying complaint and the insurance policy to determine the potentiality of coverage. *Id.* This rule has been modified to permit insureds (but not insurers) to produce extrinsic evidence for the purpose of demonstrating the potentiality of coverage. *Aetna Cas. & Surety Co. v. Cochran,* 337 Md. 98, 651 A.2d 859, 866 (1995). Any doubt as to whether there is a duty to defend must be resolved in favor of the insured. *Walk,* 852 A.2d at

106–07. If any claims alleged in the complaint potentially come within the policy coverage, the insurer is then obligated to defend all claims. *Utica Mut. Ins. Co. v. Miller,* 130 Md.App. 373, 746 A.2d 935 (Md.Ct.Spec.App.2000). However, an insured may not extract stray phrases out of letters and discovery to transform allegations into coverage-triggering claims. *Moscarillo v. Prof. Risk Mgmt. Servs., Inc.,* 398 Md. 529, 921 A.2d 245, 256 (2007) (quoting *Walk,* 852 A.2d at 105).

■ The Court need determine only whether one exclusion applies as that would be sufficient to bar coverage under the Policy. *See Harbor East–Office, LLC v. Travelers Cas. & Sur. Co.,* No. 98–2329, 1999 WL 672154, at *4 (4th Cir. Aug. 30, 1999) (holding that the Court was not required to evaluate all of the exclusions under the policy when at least one of those exclusions clearly barred coverage). The Court of Appeals of Maryland has noted that although exclusions are to be construed strictly, "where the insurer properly and unambiguously uses language in its exclusion, the clear and specific terms must be enforced since the insurer can not be held liable for risks it did not assume ... [because] the insurer may freely limit liability and impose reasonable conditions upon the obligations it assumes by contract, provided that the exclusion does not violate statutory mandates or public policy." *Megonnell v. United Servs. Auto. Ass'n,* 368 Md. 633, 796 A.2d 758, 772 (2002) (quoting Eric Mills Holmes & Mark S. Rhodes, 2 *Holmes's Appleman on Insurance* 276–81 (2d ed. 1996)).

## C. The Hartford Policy and the Intellectual Property Rights Exclusion

MJP contends that the Hartford had a duty to defend it under the *P & W* suit, which alleged that MJP violated P & W's common law and federal statutory rights

by its use of the trade name and trademark[3] "Marvin J. Perry & Associates." The Hartford asserts that even though the Policy insures against "advertising injury," the "Intellectual Property Rights Exclusion" bars coverage such that there was no "potentiality" of coverage that would trigger the duty to defend.

The Policy provides, in part, that the Hartford:

> will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of ... "personal and advertising injury" to which this insurance applies. [The Hartford] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [the Hartford] will have no duty to defend the insured against any "suit" seeking damages for ... "personal and advertising injury" to which this insurance does not apply.

Def.'s Mot. Summ. J. Ex. 5 (hereinafter "the Policy") ¶ A.1.a.

The Policy defines "personal and advertising injury" to include injury arising out of, *inter alia*, "[i]nfringement of copyright, slogan, or title of any literary or artistic work, in your 'advertisement.'" Policy ¶ G.15.g. An "advertisement" is defined as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through radio, television, billboard, magazine, newspaper, the Internet ... or any other publication that is given widespread public distribution." Policy ¶ G. 1.a-c.

The Policy contains a "Personal and Advertising Injury" Exclusion (hereinafter "Intellectual Property Rights Exclusion") that excludes coverage for "Personal and Advertising Injury ... [a]rising out of any violation of **any intellectual property rights,** such as patent, **trademark, trade name,** trade secret, service mark or **other designation of origin or authenticity.**" Policy ¶ B.1.p(7) (emphasis added). This exclusion does not apply to infringement of copyright, slogan **"unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity,"** or title of any literary or artistic work. *Id.* (emphasis added).

Although there are no reported Maryland or Fourth Circuit cases interpreting the application of an Intellectual Property Rights Exclusion, both the plain and unambiguous language of the exclusion and the allegations of the complaint in the underlying suit, in addition to decisional law from other circuits, support the conclusion that this exclusion bars coverage for MJP under the Policy under both counts in the underlying complaint.

Considering almost identically-worded exclusions, the United States Courts of Appeals for the Sixth and Seventh Circuits have held that the Intellectual Property Rights Exclusion at issue in those cases applied, such that the insurer was relieved of its duty to defend. The Seventh Circuit held that an almost-identically-worded insurance policy that provided coverage for "advertising injury" but excluded coverage for that injury "arising out of any violation of any intellectual property rights" sufficed to relieve the insurer of its duty to defend its insured in an underlying suit asserting mislabeling of products and trademark violations. *Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732–35 (7th Cir.2006). Likewise, the Sixth Circuit explained that because "[a]ll four counts of

---

**3.** A trademarked word or symbol identifies its source by distinguishing it from competitors' goods in the minds of customers. It cannot be deceptive, confusing, descriptive, or, generally, a surname. It is the exclusive right of its owner to use a word or device to distinguish his or her product. Lanham Act, § 45, 15 U.S.C. § 1052.

[the underlying] complaint were based upon [the insured's] use of the trademark, ... the clear language of the policy exclusion for 'infringement of trademark' applies, and ... [the insurer] had no duty to defend [the insured]." *Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.*, 25 F.3d 332, 337 (6th Cir.1994); *see also Global Computing, Inc. v. Hartford Cas. Ins. Co.*, No. 05–C–6753, 2007 WL 844618, at *4 (N.D.Ill. Mar. 14, 2007) (holding that identically-worded exclusion for violation of intellectual property rights relieved insurer of its duty to defend insured in underlying action involving allegations of trademark infringement and false designation of origin claims); *Greenwich Ins. Co. v. RPS Prods., Inc.*, 379 Ill.App.3d 78, 318 Ill.Dec. 79, 882 N.E.2d 1202, 1212 (2008) (same). *But see NGK Metals Corp. v. Nat'l Union Fire Ins. Co.*, No. 1:04–CV–56, 2005 WL 1115925, at *15 (E.D.Tenn. Apr. 29, 2005) (holding that insurer had a duty to defend insured in the underlying trademark action despite similarly-worded exclusion for violation of intellectual property rights).

Here, the plain and unambiguous language of the Intellectual Property Rights Exclusion supports a finding that the exclusion applies. P & W's complaint in the underlying action alleges two causes of action: the first for common law trademark infringement and the second for dilution and diminishment of P & W's "famous mark" in violation of the Lanham Act. *See* Def.'s Mot. Summ. J. Ex. 3 (Complaint for *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.*, Civil No. 8:05–cv–3126–MJG).

In support of its allegations, P & W alleged that although MJP had transferred the trade name, assets (i.e. government contracts), and goodwill associated with the trade name "Marvin J. Perry & Associates" to P & W in 1993, MJP continued to use the trade name, logo, website and trademark associated with and registered to P & W in a manner that misrepresented that MJP was the same entity as P & W. *Id.* ¶¶ 20–45. It is undisputed that P & W suffered an "advertising injury" as defined under the Policy because MJP widely disseminated information (over the internet and at trade conventions) for the purpose of inducing sales that allegedly infringed upon P & W's registered trade name, logo, and trademark of "Marvin J. Perry & Associates" by misrepresenting that MJP was the same entity as P & W. *Id.* ¶¶ 36, 43–45. Thus, the sole issue is whether the Exclusion applies.

With regards to Count Two, which alleges dilution in violation of federal trademark laws, the Exclusion clearly applies and explicitly bars coverage for injury arising out of violations of trademark, trade name, and other designation of origin. It cannot be clearer that P & W's suit asserting violations of its trademark and trade name are contemplated expressly by the exclusion. *Megonnell*, 796 A.2d at 772 (holding that "where the insurer properly and unambiguously uses language in its exclusion, the clear and specific terms must be enforced since the insurer can not be held liable for risks it did not assume"). Although the exclusion does not explicitly list other forms of intellectual property rights, the exclusion's use of the expansive category "**any** intellectual property rights" and the phrase "such as" indicates that its list of intellectual property rights is neither exhaustive or exclusive. *See Bragdon v. Abbott*, 524 U.S. 624, 639, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (noting that "the use of the term 'such as' confirms [that] the list is illustrative, not exhaustive"). MJP wisely concedes that Count Two of the Complaint, which alleged federal trademark and trade name violations, "did not trigger the duty to defend under the applicable Hartford policies." Pl.'s Opp. at 2.

■ Accordingly, MJP rests its claim for defense costs upon Count One of the Complaint, which alleged unfair competition by infringement of common-law rights; MJP contends that this legal claim and the factual allegations in support of it triggered the Hartford's duty to defend. *See id.;* Def.'s Mot. Summ. J. Ex. 3 (Complaint for *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.,* Civil No. 8:05–cv–3126–MJG). MJP argues that Count One of the underlying complaint involved claims that were separate and distinct from the trademark and trade name contentions, which are subject to the Intellectual Property Rights Exclusion. Specifically, MJP claims that P & W's contentions in the underlying suit regarding that MJP's use of P & W's registered trade name "Marvin J. Perry & Associates," logo, website (www.marvinjperry.com), and MJP's subsequent launch of the similar-sounding website www.marvinjperryinc.com "could also be viewed as disparagement of P & W's separate identity from MJP." Pl.'s Opp. 11.

Though MJP's allegations as to how Count One is separate and distinct from Count Two's allegations of violations of federal trademark law are rather sparse, the Court notes that MJP appears to argue that Count One concentrates on the common law tort of interference with business relations and the doctrine of unfair competition. For the reasons that follow, these grounds also do not support a conclusion that Count One was arguably or potentially covered such that the Hartford had a duty to defend.

■ First, Maryland recognizes the doctrine of unfair competition, which has been "extended to prevent deception of the general public through the employment of methods [that violate the basic principle of common business integrity]." *Baltimore Bedding Corp. v. Moses,* 182 Md. 229, 239, 34 A.2d 338, 343 (1943). What constitutes "unfair competition" is a fact- and circumstance-specific, which is subject only to "the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception." *Id.* at 237, 34 A.2d at 338. Specifically, this doctrine springs from the rule an individual is liable for diverting customers from another to himself by fraudulent misrepresentation. *Edmondson Vill. Theatre, Inc. v. Einbinder,* 208 Md. 38, 43, 116 A.2d 377 (1955). Federal trademark law does not preempt Maryland's "broader consumer-oriented remedies provided by the common law of unfair competition." *Barnett v. Maryland State Bd. of Dental Examiners,* 293 Md. 361, 379, 444 A.2d 1013 (1982) (citation omitted).

Here, MJP's use of P & W's registered trademark, logo, and website were acts that were allegedly intended to—and did—divert customers from P & W to MJP. Specifically, P & W alleged in Count One that MJP's use of P & W's mark, name, website, and logo was an "attempt[ ] to deceive purchasers," which was successful in confusing customers and which brings MJP's conduct within the realm of fraudulent conduct contemplated by the doctrine. *See* Def.'s Mot. Summ. J. Ex. 3 (Complaint for *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.,* Civil No. 8:05–cv–3126–MJG) ¶ 54; *see also Prestwick, Inc. v. Don Kelly Bldg. Co.,* 302 F.Supp. 1121, 1124–25 (D.Md.1969) (holding that plaintiff's common law trade mark of "Tantallon" for its residential community was infringed by defendant's use of the similar term "Tantallon Square" to describe its competing residential community such that it constituted unfair competition under Maryland law). The independent unlawful conduct that caused P & W's business injury, which is the gravamen of P & W's underlying complaint and an element of the tort, is based upon MJP's use of its trade name, trademark, logo, and website to describe

and in conjunction with its promotion of its furniture business to the federal government in violation of P & W's registration and ownership of that name and mark that were used to describe and to connote its furniture business with the federal government. *See* Def.'s Mot. Summ. J. Ex. 3 (Complaint for *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.*, Civil No. 8:05–cv3126–MJG) ¶¶ 8–15, 20–22, 28–45. Accordingly, because the alleged unfair competition, which is premised upon MJP's misrepresentation that it is the same entity as P & W, "[a]ris[es] out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity," the Intellectual Property Rights Exclusion applies to exclude it and relieve the Hartford of its duty to defend. *See* Policy ¶ B.1.p(7). In short, but for the alleged trademark violation, there would be no unfair competition claim.

■ Second, Maryland similarly recognizes the tort of interference with business relationships,[4] which requires a showing of intentional and willful acts that are calculated to cause damage to the plaintiff's lawful business and done with the unlawful purpose of causing actual damage and loss absent any right or justifiable cause to do so. *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 504, 665 A.2d 297 (1995). An important element of this tort is that the defendant's conduct in interfering with the business relations was accomplished through "improper means" that are independent of the effect on the plaintiff's business. *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 652, 650 A.2d 260 (1994). This has been interpreted to include "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Spengler v. Sears, Roebuck & Co.*, 163 Md.App. 220, 242–43, 878 A.2d 628 (2005).

In P & W's complaint in the underlying suit, P & W alleged that it had registered "Marvin J. Perry & Associates" and the corresponding logo as its respective trade name and trademark with Maryland and that it used both to identify its services, which included business with the federal government and at industry events. *See* Def.'s Mot. Summ. J. Ex. 3 (Complaint for *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.*, Civil No. 8:05–cv–3126–MJG) ¶¶ 48–54. It is clear from the complaint in the underlying suit that the allegedly "improper means" by which MJP interfered with P & W's existing and prospective business relationships was by MJP's intentional act of misrepresenting that it was the same entity as P & W by MJP's use of P & W's trade name and trademark. *Id.* ¶¶ 53–54. A key element of proof in a tortious interference with business relations claim is that the defendant employed "improper

---

4. Maryland also recognizes the related action of tortious interference with contractual relations, which has five elements: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff. *See K & K Management v. Lee*, 316 Md. 137, 155–156, 557 A.2d 965 (1989). The two types of actions differ in the limits on the right to interfere which will be recognized in either case. Thus, where a contract between two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted while a broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved. *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69–70, 485 A.2d 663 (1984). Because there was no allegation in the complaint that a contract was involved, the tort of interference with contractual relations is inapplicable to the present case.

means," which in this case required a determination of whether MJP's use of P & W's registered trade name and trademark was in violation of state and federal laws. As such, once again, this tort "[a]rises out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." Policy ¶ B.1.p(7). Accordingly, the Intellectual Property Rights Exclusion applied to relieve the Hartford of its duty to defend the underlying suit because there was no potentiality that this claim came within the coverage of the Policy.

The cases upon which MJP relies for the proposition that the duty to defend was triggered by its use of the website are easily distinguishable both factually and legally. In *State Auto. Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 253, 260 (4th Cir.2003), the insurance policy upon which the Fourth Circuit based its holding that the duty to defend was triggered by the dispute about a party's use of website advertising is factually distinguishable than the one currently before the Court because the *State Auto Prop.* policy did not contain an Intellectual Property Rights exclusion, which the Policy before the Court does. MJP's other case, *AMCO Ins. Co. v. Lauren–Spencer*, 500 F.Supp.2d 721, 729 (S.D.Ohio 2007), is distinguishable because that case addressed and resolved a copyright claim only—it did not address whether any trademark or trade name issues may be implicated by website advertising, which is the precise issue in this case. Most importantly, though, is that the exclusion in that policy did not apply to infringement of copyright. *Id.* at 727.

Likewise, MJP's contention that its use of letterhead and a logo (which were iden-

tical to those used by P & W) also triggered the duty to defend is weak, at best. This contention is MJP's attempt at an end-run around the fact that its use of the letterhead and logo involved the use of a trademark and a trade name, which MJP has already conceded (and which it clear from both the plain language of the Policy and the Intellectual Property Rights exclusion) does not trigger the duty to defend.

First, it is unclear whether the use of the letterhead and logo are considered an "advertising injury" that the Policy is intended to cover because there is no evidence in the record before the Court that MJP's use of the letterhead and logo were more than mere directed solicitations to the United States Department of State, which are not considered "widespread dissemination." *See Monumental Life Ins. Co. v. U.S.F. & G.*, 94 Md.App. 505, 526–27, 617 A.2d 1163 (1993); *see also* Def.'s Mot. Summ. J. Ex. 3 (Complaint for *Perry & Wilson, Inc. v. Marvin J. Perry, Inc.*, Civil No. 8:05–cv3126–MJG). Second, even assuming *arguendo* that the letterhead and logo were considered "advertisements" such that the Policy would apply, the Intellectual Property Rights exclusion would also apply to bar any coverage for these claims sounding in the use of a "trademark, trade name ... or other designation of source" and thus relieve the Hartford of any duty to defend.

Therefore, because there is no "potentiality" that the intellectual property rights violations for which MJP was sued in the underlying litigation triggered the Hartford's duty to defend under the Policy and the Intellectual Property Rights Exclusion, the Court concludes that Intellectual Property Rights Exclusion applies and relieves the Hartford of its duty to defend MJP in the underlying suit.[5]

---

**5.** Due to the Court's resolution of the Motion for Summary Judgment, the Court does not need to reach the issue of whether it should strike the report and testimony of Plaintiff's

## III. CONCLUSION

For the foregoing reasons, the Court will, by separate order, grant Defendant's Motion for Summary Judgment [Paper No. 47].

## *ORDER*

Upon consideration of Defendant's Motion for Summary Judgment [Paper No. 47], the Opposition thereto, and for the reasons stated on the record at the hearing on April 16, 2009 and in the accompanying Memorandum Opinion, it is this 19th day of May, 2009, by the United States District Court for the District of Maryland,

**ORDERED** that Defendant's Motion for Summary Judgment [Paper No. 47] is **GRANTED;** and it is further

**ORDERED** that Defendant's Motion in Limine to Preclude Olie R. Jolstad from Testifying in This Action and to Strike His Expert Report [Paper No. 48] is **DENIED AS MOOT;** and it is further

**ORDERED** that it is **ADJUDGED AND DECLARED** that the Plaintiff, Marvin J. Perry, Inc., is not entitled to defense costs, attorneys' fees and interest incurred as a result of the underlying suit (*Perry & Wilson, Inc. v. Marvin J. Perry, Inc.,* Civil No. 8:05–cv–3126–MJG) and that Plaintiff, Marvin J. Perry, Inc., is not entitled to reimbursement of its costs, attorneys' fees and interest in the present suit (*Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.,* Civil No. 8:08–cv–138–RWT) for breach of contract and declaratory judgment; and it is further

**ORDERED** that judgment for costs be entered in favor of the Defendant; and it is further

expert Olie J. Jolstad. Accordingly, Defendant's Motion in Limine to Preclude Olie R. Jolstad from Testifying in This Action and to

**ORDERED** that the Clerk of Court **CLOSE** the case.

Strike His Expert Report [Paper No. 48] will be denied as moot by separate order.