FIRST DIVISION

No. 1-09-3070

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CH 17501 |
| | ) | |
| UNITED AUTOMOBILE INSURANCE COMPANY, | ) | The Honorable |
| | ) | Kathleen M. Pantle, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Hall and Justice Hoffman concurred in the judgment and opinion.

**O P I N I O N**

Plaintiff, American Service Insurance Company (ASI), appeals the trial court's order denying its motion for summary judgment and granting the cross-motion for summary judgment filed by defendant, United Automobile Insurance Company (UAIC). In so doing, the trial court determined that, because UAIC had rescinded its policy, defendant owed no duty to defend or indemnify a claim resulting from a February 2, 2004, car accident in which plaintiff's insured was injured. On appeal, plaintiff contends the trial court erred in denying its motion for summary

judgment because defendant improperly rescinded its policy where defendant's insured did not make any material misrepresentations on her insurance application and had no duty to notify defendant of changes to her application responses. Plaintiff further contends defendant waived its right to rescind coverage of the insured by failing to promptly act after learning of an accident prior to the accident at issue. Based on the following, we affirm.

FACTS

On April 9, 2003, Janice Baker applied for an insurance policy with UAIC *vis-a-vis* Lincoln Insurance Agency, an independent agency. The application was completed by telephone. In the application, Baker was asked, "[I]s there any operator in the household under 25 years of age?" Baker answered "no." When asked the "Names of all Operators," Baker listed herself and her husband, John Webb. "Operator" was not defined in the policy. Baker testified at her deposition that she understood the term "operator" to mean a driver. The application was signed by Baker's agent.

UAIC issued a policy to Baker providing bodily injury and property damage liability from April 9, 2003, to April 9, 2004, on a 1986 Chevrolet Monte Carlo. The policy excluded Baker's husband, John, from coverage. The declarations page contained

1-09-3070

the following disclosure:

> "Coverage afforded is only with respect to the
> coverages indicated herein by a specific premium charge
> or charges.  The limit of the company's liability
> against each such coverage shall be stated herein,
> subject to all terms of this policy.  Insured warrants
> that there are no other drivers in the household other
> than those listed in the application or endorsement."

The policy provided coverage to Baker, as the named insured, and "any other person using such automobile to whom the named insured has given permission, provided the use is within the scope of such permission."

In addition, the conditions section of the policy provided:

> "If there has been a misrepresentation or false
> warranty, made with actual intent to deceive or which
> materially affects either the risk or hazard assumed by
> the Company, made by the insured or in his behalf in
> the negotiation for this policy, or breach of condition
> of such policy, and if said misrepresentation or false
> warranty or breach of condition is stated in the policy
> or endorsement or rider attached thereto, or in written
> application for this policy, then this policy shall be
> null and void and of no benefit, provided, however,

that the Company, during the lesser of the first year of the policy or the first term of the policy, rescinds the policy and declares this policy void. If the policy has been in effect more than the lesser of one year or the first policy term, then the Company shall not rescind this policy. Notwithstanding any other provision in this policy, this policy shall provide no coverage or benefit to any person who makes a fraudulent statement or omission or engages in fraudulent conduct with respect to any accident or loss for which coverage or a benefit is sought under this policy or any renewal of this policy."

Further, the conditions section of the insurance policy contained a paragraph entitled "Declarations," which provided:

"By acceptance of this policy, the insured named in item 1 [Baker] of the Declarations agrees that the statements contained in the Application, a copy of which is attached to and forms part of this policy, have been made by him or on his behalf and that said statements and the statements of the Declarations *and any subsequent Application accepted by the Company* are offered as an inducement to the Company to issue or continue this policy and that the same are his

agreements and representations, and that this policy is issued *and continued* in reliance upon the truth of such statements and representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance." (Emphasis added.)

On May 4, 2003, the UAIC policy was amended to change the covered vehicle to a 1993 Ford Thunderbird. An amended declarations page was issued providing that "this declaration page with 'policy provisions' and all other applicable endorsements complete your policy." Two drivers were listed, Baker and John. Baker was listed as the principle driver and John was listed as "excluded."

On May 14, 2003, Baker's son, Devin Webb, received his learner's driving permit. On June 10, 2003, Devin was driving Baker's insured vehicle with her permission and was involved in a car accident with a light pole. The accident resulted in property damage, but no bodily injuries. On June 17, 2003, Baker called UAIC to report the accident. Baker and Devin agreed to provide recorded statements to UAIC.

In her recorded statement, Baker informed UAIC that her son was driving the insured vehicle with her permission when he was involved in the accident. Baker said that her son had lived with

her at 9004 S. Ada Street in Chicago, Illinois, for 7 1/2 years. Baker said that, since "April 4, 2003,"[1] Devin operated her vehicle two times per week.  Devin did not have a driver's license; Devin had a "blue slip."  When asked why Devin was not disclosed to "the agent," Baker replied that Devin is "not an operator" but that she thought she "mentioned him."

In his recorded statement, Devin reported living with Baker, having a "blue slip," and driving Baker's car "every other day" since April 9, 2003.  Devin said he usually drove with his mother as a passenger because of his "blue slip"; however, when the accident occurred, Devin was driving alone.

UAIC informed Baker that Devin was a "DNOP," or a driver not on the policy, and there was a "coverage issue" that needed to be resolved.  It is uncontested that Baker continued to make premium payments for her insurance.

William Raniere, in-house counsel for UAIC, testified at his deposition that UAIC first became aware Devin lived in Baker's home and was 17 years old after Baker reported the June 10, 2003, accident.

Devin obtained his driver's license on August 14, 2003. Sometime prior to February 1, 2004, Baker requested that the

---

[1]We assume the date is a typographical error because the insurance application was completed on April 9, 2003.

insured vehicle on her policy be amended to a 1991 Ford Taurus. Devin's name was not added to the policy.

On February 2, 2004, Devin was involved in another accident while driving Baker's insured vehicle. LaTonya Terrell and Bruce Jones, Devin's uncle, were passengers in the car with Devin. LaTonya sustained bodily injuries. The accident involved a parked car, which was damaged as well.

On March 15, 2004, after Baker contacted UAIC to report the second accident, UAIC rescinded her policy effective April 9, 2003, as a result of a material misrepresentation in the application. Baker's insurance premiums were returned thereafter.

At her deposition, Baker testified that Devin did not drive her vehicle prior to April 9, 2003. Baker attested that she was not in the car with Devin during the June 10, 2003, accident. Baker further testified that she and Devin were sued by the owner of the parked car involved in the February 2, 2004, accident. Baker said UAIC refused to defend that lawsuit and refused to indemnify Baker for the judgment. Baker said the accident was reported to the Illinois Secretary of State, who subsequently suspended her driver's license and Devin's driver's license for lack of insurance coverage.

At his deposition, Devin testified that he never drove

Baker's car prior to receiving his learner's permit. After receiving his learner's permit, Devin said he only drove the car while Baker was a passenger. Devin testified that, after his license was suspended following the February 2, 2004, accident, he continued to drive when necessary and was arrested three times for driving on a suspended license.

LaTonya was insured by ASI with coverage against uninsured motorists. LaTonya filed an uninsured motorist claim because Baker's policy had been rescinded by UAIC. On October 13, 2005, ASI filed a complaint requesting declaratory relief against LaTonya and UAIC such that: (1) Devin was an insured under the UAIC policy when the February 2, 2004, accident occurred; and (2) ASI owed no duty to provide uninsured motorist coverage or any other coverage to LaTonya as a result of the February 2, 2004, accident.

On March 10, 2006, UAIC filed a counterclaim and third-party complaint against ASI, LaTonya, Devin, Janice, John, Billy Terrell, and American Ambassador Insurance, a/s/o Stephen Thomas. UAIC requested declaratory relief such that: (1) the UAIC policy was rescinded and thus there was no coverage for the February 2, 2004, accident; (2) a judgment against American Ambassador Insurance, a/s/o Stephen Thomas, that UAIC was not obliged to pay or defend any claims resulting from the February 2, 2004,

accident; and (3) UAIC was not obliged to pay out any sums under its policy.

On October 15, 2009, the trial court granted summary judgment in favor of UAIC and denied summary judgment in favor of ASI. The trial court concluded that UAIC properly rescinded its policy where there was a material misrepresentation on Baker's application because Baker failed to disclose Devin as a minor household driver. Moreover, Baker failed to comply with her duty of good faith and fair dealing when she failed to update UAIC with the material information that Devin obtained his driver's permit 35 days after the insurance application was completed. The court further concluded that UAIC did not waive its right to rescind the policy. This appeal followed.

DECISION

Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2002). When cross-motions for summary judgment have been filed, the parties agree that no genuine issue as to any material fact exists and only a question of law is at issue; therefore, the parties invite

the trial court to decide the issues based on the record. *Greenwich Insurance Co. v. RPS Products, Inc.*, 379 Ill. App. 3d 78, 84, 824 N.E.2d 1102 (2008). We review an order granting summary judgment *de novo*. *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314 (2001).

I. Material Misrepresentation

ASI contends there could be no material misrepresentation justifying the rescission of the insurance policy because Baker was asked to list all operators, drivers, users, and co-owners on her application and Devin was not an operator, driver, user, or co-owner at the time as he did not receive his learner's permit until after the application was submitted and the policy was issued.

Prior to rescinding an insurance policy, an insurer must satisfy the following criteria set by section 154 of the Illinois Insurance Code (Code):

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the

written application therefor.  No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company."  215 ILCS 5/154 (West 2002).

Materiality is determined by considering whether a reasonably careful and intelligent person would have regarded the facts omitted as substantially increasing the chances of the events insured against so as to cause a rejection of the application or different conditions such as higher premiums. *Ratliff v. Safeway Insurance Co.*, 257 Ill. App. 3d 281, 288, 628 N.E.2d 937 (1993).  A material misrepresentation may result where an insured fails to disclose material information or provide complete information in response to a question.  *Cohen v. Washington National Insurance Co.*, 175 Ill. App. 3d 517, 520, 529 N.E.2d 1065 (1988).  "An insurance applicant has the duty to act in good faith, and an insurer is entitled to truthful responses so that it may determine whether the applicant meets its underwriting criteria.  Thus, the applicant must disclose all information and let the insurer determine the materiality of the *** information."  *Garde v. Country Life Insurance Co.*, 147 Ill. App. 3d 1023, 1032, 498 N.E.2d 302 (1986).  An insurance policy

may be voided even if the insured's misrepresentation was a mistake or made in good faith. *Ratliff*, 257 Ill. App. 3d at 288.

It has been found that the nondisclosure of a 20-year-old driver residing in the same household as the insured is a misrepresentation materially affecting the risk assumed by the insurer. *Id*. " 'It is a matter of common knowledge that the rate frequency of accidents for drivers between the ages of sixteen and twenty-four is substantially greater than that for all drivers who are twenty-five years of age or more.' [Citation.]" *Id*.

In the case before us, the insurance application contained a section entitled "Questions Pertaining To Applicant And All Members of Household." That section contained 12 questions. In relevant part, the application asked "is there any operator in the household under 25 years of age?" Baker responded, "no." The section also contained several blank lines to provide the "names of all operators." Baker was listed as an operator; John was listed as an operator with the word "exclude" where his driver's license number was requested; Devin was not listed as an operator. At the bottom of the application, a disclosure entitled "applicant's statement" appeared:

"The applicant hereto states that he read this

application and attests that all answers given by him to the questions asked herein are truthful to the best of his knowledge and belief and that said answers were made as inducement to the insurance company to issue a policy, and it is a special condition of this policy that the policy shall be null and void and of no benefit or effect whatsoever as to any claim arising thereunder in the event that the attestations or statements in this application shall prove to be false or fraudulent in nature.

It is understood that a copy of this application shall be attached to and form a part of the policy of insurance when issued and that it is intended that the company shall rely on the contents of this application in issuing any policy of insurance or renewal thereof."

Moreover, as stated earlier, the policy provided:

"Notwithstanding any other provision in this policy, this policy shall provide no coverage or benefit to any person who makes a fraudulent statement or omission or engages in fraudulent conduct with respect to any accident or loss for which coverage or a benefit is sought under this policy or any renewal of this policy."

Although not defined in the policy, it is clear from Baker's recorded statement and her deposition testimony that she understood the term "operator" to mean driver. Even assuming it was not a material misrepresentation to omit Devin as an operator on the April 9, 2003, application, Baker had an obligation, as a condition of the policy, to inform UAIC once Devin did begin driving the vehicle. See 215 ILCS 5/154 (West 2002). The application, the policy, and the declarations page each reveal the importance of accurate information, including the names and ages of all eligible drivers. Moreover, the amended declarations page issued as a result of the May 4, 2003, request to update the vehicle information states that the "insured warrants that there are no other drivers in the household other than those listed in the application or endorsement."[2]

In their recorded statements, both Baker and Devin recognized that he regularly drove the vehicle after the application was submitted. The record does not reveal the exact date upon which Devin began driving the vehicle, whether before the application date or immediately after; however, the record clearly demonstrates that Devin began operating the vehicle once

_____

[2]The amended declarations page updating the insured vehicle to a Ford Taurus, which occurred sometime before February 1, 2004, did not contain the same language.

-14-

he obtained his learner's permit on May 14, 2003. Baker never contacted UAIC to update the drivers included in the policy and did not disclose Devin as a driver on either occasion when she deemed it necessary to alert UAIC that the insured vehicle had been changed, on May 4, 2003, and sometime before February 1, 2004, or even after Devin had obtained his driver's license on August 14, 2003.

Barely one month after its completion, the application no longer accurately reflected the eligible operators in Baker's household as a result of Baker's omissions. The amended declaration pages also failed to accurately reflect the eligible operators. UAIC, therefore, could no longer rely on the application's contents. The policy terms disclaimed that the UAIC policy was "issued and continued in reliance" on the truth of Baker's representations on the application and any subsequent application. In order to allow for an accurate underwriting process, UAIC found it necessary to ask the applicant whether there were any operators under the age of 25 in the household. Moreover, UAIC found it necessary to disclaim on the amended declaration page that there were no other drivers in the household other than those listed. " 'An insurer is interested in ascertaining the true owner of a car particularly where the policy covers any person who may be driving the car with the

-15-

owner's consent. *** The status, number and character of the persons who are likely to be driving the car with the owner's permission are also material to risk.' " *Safeway Insurance Co. v. Duran*, 74 Ill. App. 3d 846, 850-51, 393 N.E.2d 688 (1979) (quoting *Government Employees Insurance Co. v. Dennis*, 90 Ill. App. 2d 356, 365, 232 N.E.2d 750 (1967)). There is no doubt Baker had been sufficiently notified that Devin's status as an operator, *i.e.*, driver, was of great relevance.

As previously stated, it is well established that drivers under the age of 25 are involved in accidents with much greater frequency. Devin fell into the increased-risk category because he was 17 years old when he obtained his learner's permit. Once Devin began operating Baker's vehicle, the insurance policy failed to adequately provide for UAIC's increased risk exposure. Raniere's deposition testimony demonstrated that the addition of Devin as a driver on Baker's policy would have resulted in an increased premium of $845.

We, therefore, conclude that Baker generated material misrepresentations when she failed to notify UAIC that Devin was operating the insured vehicle. The facts demonstrate that Devin was not merely a passive user; thus, even if his use was permitted, the insurance coverage did not extend to his regular operation of the vehicle. The policy provided that a

misrepresentation would cause the policy to be "null and void and of no benefit" and that a fraudulent statement or omission in relation to a benefit "sought under this policy or any renewal of this policy" would result in "no coverage or benefit." Consequently, UAIC was within its rights to rescind Baker's policy.

II. Waiver of Rescission Rights

ASI contends UAIC waived any right it had to rescind Baker's policy because UAIC failed to promptly act on those rights when UAIC first learned Devin was driving the insured vehicle, instead waiting nine months until Devin's second accident before rescinding the policy. ASI further contends the trial court improperly relied upon section 154 of the Code to conclude UAIC acted to rescind the policy within the applicable one-year time period.

Rescission is the cancellation of a contract thereby restoring the parties to their initial status. *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 165, 821 N.E.2d 706 (2004) (citing *Horan v. Blowitz*, 13 Ill. 2d 126, 132, 148 N.E.2d 445 (1958)). Section 154 of the Code provides:

"With respect to a policy of insurance as defined in subsection (a), (b), or (c) of Section 143.13, except

life, accident and health, fidelity and surety, and ocean marine policies, a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less."

215 ILCS 5/154 (West 2002).

"[A] material representation under section 154 *** renders the policy voidable, not void *ab initio*, and an insurer can waive this right if it does not invoke it promptly." *Coregis*, 355 Ill. App. 3d at 167. In *Coregis*, this court noted that, while not applicable to the facts of that case, the legislature "has since spoken as to the outer limit of what constitutes promptness by imposing a one-year time limit within which an insurer must act to void a policy based upon a material misrepresentation under section 154." *Id*. at n.4.

Contrary to ASI's argument, UAIC rescinded Baker's insurance policy within the proscribed time period. The policy was first issued on April 9, 2003, and it was rescinded on March 15, 2004. ASI's construction of section 154 impermissibly restricts the statute. The statute does not merely create a bar for when an insurance policy can no longer be rescinded. As stated in *Coregis*, the legislature created a time period, namely, one year, that satisfies "prompt" rescission.

Moreover, Baker's policy itself supports UAIC's rescission.

-18-

The conditions section of the insurance policy said:

"Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the Company."

The insurance policy expressly reserved UAIC's rescission rights despite its knowledge in June 2003 that Devin was driving the insured vehicle.

We, therefore, conclude that UAIC did not waive its rescission rights.

CONCLUSION

Because Baker materially misrepresented the fact that Devin was an operator of her insured vehicle and UAIC acted within the one-year time limit, UAIC properly rescinded Baker's insurance policy.  As a result, we affirm the judgment of the trial court granting summary judgment in favor of UAIC.

Affirmed.

1-09-3070

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

AMERICAN SERVICE INSURANCE COMPANY,

Plaintiff-Appellant,

v.

UNITED AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

---

No. 1-09-3070

Appellate Court of Illinois

First District, FIRST DIVISION

April 18, 2011

---

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Presiding Justice Hall and Justice Hoffman concurred in the

judgment and opinion.

---

Appeal from the Circuit Court of Cook County.

The Hon. Kathleen M. Pantle, Judge Presiding.

---

**COUNSEL FOR APPELLANT**

Newman Raiz, LLC, Chicago, IL 60603

OF COUNSEL: James P. Newman and William H. Ransom

**COUNSEL FOR APPELLEE**

Shelist Law Firm LLC, Chicago, IL 60610

OF COUNSEL: Samuel A. Shelist