2021 IL App (1st) 201122
No. 1-20-1122

FIRST DIVISION
November 22, 2021

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| UNITED EQUITABLE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) ) | No. 19 CH 00668 |
| v. | ) ) | |
| ANTHONY THOMAS, CARL HENRY, UNKNOWN INSURERS, and SHYEATA RASCOE, | ) ) ) ) | The Honorable Neil H. Cohen, Judge Presiding. |
| Defendants | ) ) | |
| (Anthony Thomas and Shyeata Rascoe, Defendants-Appellees). | ) ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Coghlan and Walker concurred in the judgment and opinion.

## OPINION

¶ 1        Plaintiff United Equitable Insurance Company (UEIC) appeals from the circuit court's order denying UEIC's motion for summary judgment, granting summary judgment to defendants Anthony Thomas and Shyeata Rascoe, and dismissing UEIC's declaratory judgment action. For the following reasons, we conclude that (1) UEIC's attempt to rescind coverage due to Thomas's misrepresentations was untimely pursuant to section 154 of the Illinois Insurance Code (Code)

(215 ILCS 5/154 (West 2016)) and similar policy language and (2) policy exclusions barring certain coverages for an insured vehicle "while used as a public livery or conveyance" were inapplicable to the underlying claim for uninsured motorist coverage. Thus, we affirm the judgment of the trial court.

¶ 2                                BACKGROUND

¶ 3        This appeal arises from an automobile insurance coverage dispute arising from a collision that occurred in June 2017. The following facts are derived from the record on appeal and are not in dispute, unless otherwise noted.

¶ 4        In March 2016, Thomas sought automobile insurance through an insurance producer, Insure on the Spot Services, Inc. ("Insure"). In an application dated March 21, 2016, Insure, as Thomas's agent, submitted an application to UEIC for coverage for a Toyota Camry owned by Thomas. The application stated: "The agent for the applicant warrants that the information on this application was given to him/her by the applicant." Among other questions, the application asked: "Are any vehicles listed used for messenger, delivery, driver training or commercial purposes?" On behalf of Thomas, Insure indicated that the answer was no. Insure advised Thomas in a letter dated March 23, 2016 that

> "[a]ny vehicle listed on the application and any vehicle endorsed to
> the policy/renewal at a later date is not to be used for delivery,
> business or commercial purposes; including all ride sharing services
> such as Uber or Lyft. Your insurance carrier will not cover any
> losses if the vehicle(s) is being used for such purposes."

¶ 5        UEIC issued an automobile insurance policy to Thomas, with a six-month term effective from March 22 to September 22, 2016. The policy set forth different types of coverage in numbered

"parts." In part I, UEIC agreed to pay damages incurred by Thomas because of "bodily injury" or "property damage" arising from use of the insured vehicle. Part II set forth the terms of the policy's uninsured motorist coverage. Part III set forth coverage for "medical payments," and part IV set forth coverage for "physical damage."

¶ 6        Parts III and IV contained two similar exclusions that are relevant to this appeal. An exclusion in part III stated: "This policy does not apply under Part III to bodily injury: (a) sustained while occupying (1) an owned automobile while used as a public or livery conveyance." Similarly, part IV specified: "This policy does not apply under Part IV: (a) to any automobile while used as a public or livery conveyance."

¶ 7        Elsewhere, the policy enumerated various conditions, two of which are significant to this appeal. Condition 4 provided:

> "4. Fraud and Misrepresentation. It is your duty to give full and complete information on all policy documents such as the application ***. This policy is null and void and of no benefit if any information or omission by you or made on your behalf *** is misrepresented either fraudulently or mistakenly and is material to our decision to issue, renew or change this policy ***. This policy is null and void and of no benefit and provides no coverage or benefit to anyone who makes a fraudulent statement or omission or engages in fraudulent conduct with respect to any accident or loss for which coverage or a benefit is sought under this policy or renewal. The Company shall not declare this policy void from its inception due to material misrepresentation or false warranty in the

application after the policy has been in effect for one year or one policy term, whichever is less."

¶ 8    Condition 20 specified:

"20. Declarations. By acceptance of this policy, the insured *** agrees that the statements contained in the Application, a copy of which is attached to and forms a part of the policy, have been made by him or on his behalf and that said statements and the statements of the Declarations and in any subsequent Application *** are offered as an inducement to the Company to issue or continue this policy and that the same are his agreements and representations, and that this policy is issued and continued in reliance upon the truth of such statements and representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance."

¶ 9    Following the initial six-month term, the policy was renewed for a new term, effective from September 22, 2016, to March 22, 2017. The policy was renewed a second time in March 2017, to be effective from March 22 to September 22, 2017. The parties do not dispute that the renewals did not alter the aforementioned conditions and exclusions.

¶ 10    While the policy was in effect, Thomas sometimes used the insured vehicle to earn money transporting passengers through the Uber ridesharing service. In April 2016, Thomas became an independent contractor for Uber. Information provided by Uber pursuant to a subpoena indicates that between April 8, 2016, and November 12, 2019, Thomas completed 4711 trips as an Uber driver.

¶ 11    On June 11, 2017, Thomas was driving the insured vehicle, with Rascoe as a passenger, when it was involved in a collision with another vehicle. According to Thomas and Rascoe, the Camry was rear-ended by an uninsured vehicle driven by Carl Henry. UEIC has never disputed that Thomas was *not* driving the vehicle for Uber at the moment of the collision and that Rascoe was Thomas's private passenger.[1]

¶ 12    The parties do not dispute that, after the collision, Thomas and Rascoe made a claim for uninsured motorist coverage under part II of the policy.[2] Thomas and Rascoe maintain that their "underlying claim [was] brought solely under" part II. Whereas UEIC asserts on appeal that Thomas and Rascoe also made a claim under part IV, the record on appeal does not suggest there was any claim for coverage that was not a part II claim.[3]

¶ 13    Shortly after the collision, UEIC informed Thomas in writing that its investigation "show[ed] that you may have been driving your vehicle for the purpose of ridesharing (Uber, Lyft, etc)" and posed several questions about whether he had used the insured Camry for ridesharing. In written responses dated June 17, 2017, Thomas stated that he had been driving with Uber since

---

[1]In Thomas and Rascoe's cross-motion for summary judgment, they averred: "The parties have stipulated that Thomas was not driving for Uber at the time the accident occurred, and [Rascoe] was his private passenger." UEIC has not disputed that statement, although the record does not contain the referenced stipulation.

[2]The record on appeal is less than clear about the timing and nature of Thomas's initial contact with UEIC following the collision. The earliest record of communication between Thomas and UEIC following the June 11, 2017 collision consists of two documents, both dated June 17, 2017. One of those consists of UEIC's written questions regarding use of the Camry for ridesharing and Thomas's responses thereto. The second single-page document is labeled "Page 2 of 2" and appears to be part of a separate questionnaire submitted by UEIC to Thomas, which contains questions as to whether Thomas sought reimbursement for medical treatment related to the collision, whether he was receiving medical treatment at the time of the accident, and whether he had health insurance.

[3]UEIC pleaded in its declaratory judgment complaint that "Thomas and Rascoe have Made Uninsured Motorist ('UM') claims," but UEIC did not allege in the complaint that Thomas and Rascoe made any other type of claim under the policy.

"[a]bout 9 months ago" about "twice a week." Thomas answered "No" when asked if he was using the insured vehicle "for the purpose of ride-sharing (Uber, Lyft, etc) at the time of this accident."

¶ 14     The record reflects that Thomas sent an e-mail to UEIC on July 3, 2017, in which he stated that he "ma[d]e around $200-250 per week from [U]ber before the accident." In a July 9, 2017, e-mail to UEIC, Thomas asked why it was taking so long to have his car repaired and stated that, due to the car's damage, he was "unable to earn the weekly money I was earning via Uber," which caused him "great hardship."[4]

¶ 15     In a letter to Thomas dated July 13, 2017, UEIC stated its finding that the vehicle had been used for "transporting passengers for monetary compensation under the Uber platform." UEIC thus stated that it would deny "Medical Payments Coverage," citing part III's exclusion for bodily injury "sustained while occupying" an "owned automobile while used as a public or livery conveyance."

¶ 16     Thomas responded to UEIC and Insure in a letter dated July 19, 2017, in which he demanded return of all monies he had paid for the insurance. In the same letter, Thomas stated that "at the time of the accident * * * my car was not being used for Uber."

¶ 17     UEIC sent another letter to Thomas dated July 26, 2017, stating that it was denying coverage under part IV's exclusion for "any automobile while used as a public or livery conveyance." UEIC informed Thomas "Your policy with us will be canceled in 30 days."

¶ 18     On May 11, 2018, UEIC sent a letter to Thomas and Rascoe's attorney, Gregg Mandell, stating that "Coverage is being denied as [Thomas] failed to give full and complete information

_____

[4]UEIC's brief characterizes these e-mails as a "claim for lost wages from ride-share," yet Thomas's e-mails do not contain a request to reimburse him for lost earnings. At oral argument, UEIC's counsel similarly stated that Thomas made a claim for lost wages. However, nothing in the appellate record contains a request from Thomas to UEIC for reimbursement from UEIC for lost wages or earnings.

on [his] application and/or renewal by failing to disclose" the "insured vehicle's use as a public or livery conveyance." UEIC recited conditions 4 and 20 and concluded: "We must respectfully deny any all coverage's [*sic*] related to this loss."

¶ 19      The record reflects that Thomas and Rascoe made a demand for arbitration to the American Arbitration Association (AAA), although a copy of that demand is not in the record. By letter dated September 24, 2018, UEIC informed the AAA that UEIC "object[ed] to any and all AAA filings."

¶ 20      On January 17, 2019, UEIC initiated the underlying declaratory judgment action by filing a complaint in the chancery division of the circuit court of Cook County. In the complaint, UEIC alleged that, when the policy was entered into, "the parties did not contemplate nor agree to insure a commercial or livery vehicle." UEIC alleged that Thomas "affirm[ed] no commercial, delivery, or ride share use" in his application and that, "had this been disclosed, UEIC would not accept the risk and would not write the policy."

¶ 21      The complaint alleged that "Thomas and defendant passenger Shyeata Rascoe had an accident with Henry Carl (insurance not known) on 6-11-17" and that Thomas and Rascoe had made "Uninsured Motorist ('UM') claims on UEIC." UEIC pleaded that Thomas had "admitted his profession includes driving for Uber." Citing the exclusions in part III and part IV, UEIC alleged "that the policy does not apply" to an "owned auto while used as a public livery or conveyance." Referencing policy conditions 4 and 20, UEIC additionally pleaded that Thomas "agree[d] to provide full and careful information to UEIC [in] the policy, application, renewal, and claim documents" and that, "had Thomas advised UEIC he was using the vehicle as a commercial or delivery or livery, UEIC would not have accepted, kept or renewed the risk as Unacceptable."

¶ 22      In the complaint's prayer for relief, UEIC sought a declaration that UEIC "is not obligated by its policy of Insurance to pay out any sums to Defendants," that "this claim is null and void

under the policy," that the "claim is Excluded," that "there is no coverage," and that UEIC had "no duty to defend or indemnify."

¶ 23    On February 5, 2019, UEIC filed a motion to stay AAA proceedings pending resolution of the declaratory judgment action. On February 21, 2019, the circuit court issued an order staying the AAA proceeding.

¶ 24    Thomas and Rascoe filed an answer and three affirmative defenses on February 22, 2019.[5] In their first affirmative defense, they asserted that Thomas "was driving his personal automobile and was with his girlfriend passenger, Shyeata Rascoe, for personal use and not as an UBER driver nor a commercial carrier * * * when this crash took place." In the second affirmative defense, they asserted that, "at no relevant time herein, was [Thomas's] car in use as a commercial vehicle." In their third affirmative defense, Thomas and Rascoe pleaded that Thomas "was insured with [UEIC] for two years preceding this loss" and noted condition 4's language that UEIC "shall not declare this policy void from its inception due to material misrepresentation or false warranty in the application after the policy has been in effect for one year or one policy term, whichever is less."

¶ 25    The record reflects that the parties exchanged written discovery, and that Uber provided information pursuant to a subpoena and a related motion to compel.

¶ 26    On March 30, 2020, UEIC filed a motion for summary judgment, seeking a declaration that it owed no coverage. UEIC suggested that this case presented an issue "of first impression" regarding whether its policy extended coverage to an automobile used for a ridesharing service.

---

[5]Thomas and Rascoe were jointly represented in the trial court proceedings and are also jointly represented in this appeal.

UEIC asserted that ridesharing is a "commercial use" but that the policy issued to Thomas was a "family and personal auto policy."

¶ 27    UEIC emphasized that Insure informed Thomas that the insured vehicle was not to be used for ridesharing. UEIC averred that Thomas "was told that UEIC does not accept this risk and Thomas knew his insurance would not cover a commercial vehicle" yet Thomas never disclosed that he used the vehicle for ridesharing. UEIC attached affidavits from an underwriting manager and a claims manager, in which they averred that UEIC "would not accept the risk" of ridesharing.

¶ 28    Elsewhere in its motion, UEIC noted that, under section 143.19 of the Code, an insurer is allowed to cancel an automobile insurance policy if the insured vehicle is "used in carrying passengers for hire or compensation." *Id.* § 143.19(g)(2). UEIC argued that this provision illustrates that it is "within the usual parameters of risk analysis that use of a vehicle as a commercial vehicle to delivery [*sic*] people or things is a risk so different than contemplated that it is unacceptable."

¶ 29    UEIC recited conditions 4 and 20 to argue it had no duty to provide coverage, based on Thomas's purported misrepresentations and omissions regarding his use of the vehicle. Elsewhere in the motion, UEIC argued that the vehicle should be considered a commercial vehicle not subject to coverage, regardless of whether Thomas was using it to complete a trip for Uber at the moment of the collision. Citing the principle that policies should be construed to give effect to the parties' intent, UEIC argued that it "did not intend and would never agree to accept or write risk" concerning a vehicle used for ridesharing. UEIC concluded that, since Thomas failed to tell the truth about his use of the vehicle for ridesharing, UEIC properly "denied the entire claim under the Conditions of the policy."

¶ 30        On August 20, 2020, Thomas and Rascoe filed a response to UEIC's motion, as well as a cross-motion for summary judgment. In their response to UEIC's motion for summary judgment, Thomas and Rascoe maintained that Thomas was not using the vehicle for a commercial purpose, as he was "not driving for the rideshare company at the time the accident occurred." They noted that Thomas "was unable to pick up passengers while the Uber app was turned off."

¶ 31        In their cross-motion for summary judgment, Thomas and Rascoe contended that the policy provided coverage for the insured vehicle "while it is being used for personal purpose[s]." They acknowledged that the policy "excludes coverage while the vehicle is being used for public or livery conveyance" but argued that these exclusions did not apply because, at the time of the accident, Thomas was driving the vehicle for "non-business personal use." Alternatively, Thomas and Rascoe argued that any ambiguity in the policy's exclusions should be resolved in favor of coverage.

¶ 32        Thomas and Rascoe separately argued in their cross-motion that UEIC could not rescind coverage pursuant to the last sentence of condition 4, which stated that UEIC "shall not declare this policy void from its inception due to material misrepresentation or false warranty in the application after the policy has been in effect for one year or one policy term, whichever is less." Thomas and Rascoe also noted the virtually identical language in section 154 of the Code. *Id.* § 154.

¶ 33        On September 2, 2020, UEIC filed a response to the cross-motion and a reply in further support of its motion. UEIC reiterated its argument that a ridesharing vehicle is equivalent to a commercial vehicle with a "qualitatively different" risk compared to "family auto use." UEIC reiterated that, under conditions 4 and 20 of the policy, Thomas should not "benefit from his own omissions" regarding use of his vehicle for ridesharing.

¶ 34          On September 30, 2020, Thomas and Rascoe filed a reply brief in support of their motion for summary judgment, in which they maintained that the vehicle was not "commercially used" at the time of the accident. They also cited *Standard Mutual Insurance Co. v. Jones*, 2012 IL App (4th) 110526, to argue that the Code barred rescission of a policy after more than one year, regardless of misrepresentations by the insured.

¶ 35          The record does not reflect any oral argument on the cross-motions for summary judgment.

¶ 36          On October 7, 2020, the trial court entered a written memorandum and order that denied UEIC's motion for summary judgment and granted Thomas and Rascoe's cross-motion. In that order, the trial court first discussed the exclusion in part III for bodily injury "sustained while occupying" "an owned automobile while used as a public livery or conveyance", as well as the similar exclusion in part IV for "any automobile while used as a public livery or conveyance." The court reasoned that the exclusions were unambiguous and did not apply, given Thomas's personal use of the vehicle at the time of the collision:

> "Based upon the unambiguous policy language, and reading the exclusions narrowly as required, the policy exclusions at issue bar coverage where the automobile was being used as a public livery or conveyance at the time bodily injury or physical damage was sustained. It is undisputed that Thomas was not using his vehicle as a public livery or conveyance at the time of the accident."

¶ 37          The trial court proceeded to reject UEIC's argument that Thomas was not entitled to coverage due to his misrepresentations or omissions regarding his use of the vehicle. The trial court reasoned that, "even assuming the existence of a material misrepresentation, the Policy cannot be rescinded under Illinois law." The trial court noted that the policy was in effect for longer

than one year and that "[b]oth [section] 154 [of the Code] and the Policy prohibit the rescission of a policy after it has been in effect for more than a year." The court emphasized the language in condition 4 that "[t]he Company shall not declare this policy void from its inception due to material misrepresentation or false warranty after the policy has been in effect for one year or one policy term, whichever is less."

¶ 38    After concluding that UEIC "cannot rescind the policy as a matter of law," the trial court found that Thomas and Rascoe were entitled to summary judgment on the complaint, as UEIC was "not entitled to the declaratory relief it seeks." The court thus concluded that Thomas and Rascoe were "entitled to coverage for the June 11, 2017 accident."

¶ 39    UEIC filed a timely notice of appeal.

¶ 40                                    ANALYSIS

¶ 41    On appeal, UEIC requests that we reverse the trial court and declare that it owes no coverage to Thomas. In UEIC's view, the case comes down to Thomas "purposely not telling the whole truth about a qualitatively and quantitatively increased risk, a risk not contemplated by UEIC." UEIC asserts that this appeal presents an issue of first impression under Illinois law regarding the nature of insuring a vehicle used for a ridesharing service. It cites several law review articles to illustrate that the risks of insuring a vehicle used for ridesharing service are akin to insuring a commercial vehicle and are substantially different from the risks of insuring a vehicle for personal use. UEIC contends that its policy shows that it did not accept the risk of insuring a vehicle used in a ridesharing service, citing the exclusion in part IV that coverage does not apply "to any automobile while used as a public livery conveyance." UEIC also cites conditions 4 and 20 to argue that Thomas's misrepresentations preclude coverage, noting that under condition 4 "misrepresentations and omissions void coverage when made in the application." Due to Thomas's

misrepresentations and omissions regarding use of his vehicle for ridesharing, UEIC asserts that it owes no coverage.

¶ 42   Thomas and Rascoe dispute UEIC's claim that this case presents a novel issue and assert that this coverage dispute can be resolved under settled law. Thomas and Rascoe argue that, regardless of any misrepresentations, UEIC's attempt to rescind coverage is time-barred by the Code and the language of condition 4. Thomas and Rascoe further argue that UEIC cannot rely on condition 20 to deny coverage based on a misrepresentation in Thomas's application, since the application was not "attached to" the policy within the meaning of that condition. With respect to the "public livery or conveyance" exclusions in part III and part IV, Thomas and Rascoe contend that (1) the exclusions are inapplicable since they only made a claim under part II, (2) the trial court correctly determined that the exclusions were unambiguous and did not apply, and (3) even if deemed ambiguous, the exclusions should be narrowly interpreted and do not apply to bar coverage where the vehicle was not being used as a "public livery" at the time of the crash.

¶ 43   For the following reasons, we affirm the trial court. First, notwithstanding Thomas's apparent misrepresentations and omissions about his use of his vehicle for ridesharing, UEIC's attempt to void coverage was untimely under section 154 of the Code and condition 4 of the policy. Furthermore, the "public or livery conveyance" exclusions contained in parts III and IV of the policy are inapplicable, as the record reflects that the only underlying claim for coverage is an uninsured motorist claim under part II.

¶ 44   The standard of review is well settled. "Summary judgment is appropriate only where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25 (quoting 735 ILCS 5/2-

1005(c) (West 2012)). "Where parties to an insurance coverage declaratory judgment action submit cross-motions for summary judgment, the parties 'agree that no factual issues exist and that the disposition of [the case] turns only on our resolution of purely legal issues. [Citation.] Accordingly, our review proceeds *de novo*.' " *First Mercury Insurance Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 23 (quoting *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 4 237 Ill. 2d 424, 432 (2010)). Similarly, to the extent a reviewing court "must construe the terms of a contract or an insurance policy *** the court is presented with a second question of law, and our review is *de novo*. [Citations.]" *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 30.[6]

¶ 45     We note that we "may affirm a grant of summary judgment on any basis appearing in the record," regardless of whether the trial court relied on that basis or whether the trial court's reasoning was correct. *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 25.

¶ 46     We note the applicable rules of construction that were recently restated by our supreme court:

> "The primary function of the court in construing contracts for insurance is to ascertain and give effect to the parties' intent as expressed in the insurance contract's language. [Citation.] If the terms of the insurance contract are clear and unambiguous, the court will give them their plain and ordinary meaning. [Citations.] Conversely, if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against

---

[6]After the parties filed their appellate briefs, Thomas and Rascoe filed a motion for leave to cite our supreme court's May 2021 decision in *West Bend Mutual Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, as additional authority. This court allowed the motion.

the insurer who drafted the contract. [Citation.] Where competing reasonable interpretations of an insurance contract exist, a court is not permitted to choose which interpretation it will follow; rather, in such circumstances, the court must construe the insurance contract in favor of the insured and against the insurer that drafted the contract. [Citation.]" *West Bend Mutual Insurance Co.*, 2021 IL 125978, ¶ 32.

¶ 47   With these principles in mind, we first explain our conclusion that UEIC was not empowered to void coverage on the basis of Thomas's misrepresentations and failure to disclose his use of the insured vehicle for ridesharing. Much of UEIC's briefing is devoted to explaining why insuring a vehicle used for a ridesharing service such as Uber is akin to insuring a commercial vehicle and presents substantially different risks from insuring a vehicle limited to personal use. UEIC argues that it never intended to insure the sort of risks that accompany a vehicle used for ridesharing. Given Thomas's misrepresentations in the application and continued failure to disclose this use of the vehicle, UEIC relies on conditions 4 and 20 to argue that it owed no coverage for Thomas and Rascoe's claim.

¶ 48   It is apparent that Thomas failed to disclose to UEIC that he was using the insured vehicle for ridesharing. Nonetheless, we agree with the trial court that, by operation of the Code and condition 4 of the policy, it was too late for UEIC to rescind coverage by the time of the June 2017 collision.

¶ 49   Section 154 of the Code provides:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach

of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. With respect to a policy of insurance as defined in subsection (a), (b), or (c) of Section 143.13 *** *a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less*. This Section shall not apply to policies of marine or transportation insurance." (Emphasis added.) 215 ILCS 5/154 (West 2016).

¶ 50      Our court has explained that this provision

" 'establishes a two-prong test to be used in situations where insurance policies *may be voided*: the statement must be false and the false statement must have been made with an intent to deceive or must materially affect the acceptance of the risk or hazard assumed by the insurer. [Citations.]' " (Emphasis in original.) *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 167 (2004) (quoting *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 464 (2003)).

"Under the statute *** a misrepresentation, even if innocently made, can serve as the basis to void a policy. [Citation.]" *Golden Rule*, 203 Ill. 2d at 464.

¶ 51        Significantly, a " 'material representation under section 154 *** renders the policy voidable, not void *ab initio*, and an insurer can waive this right if it does not invoke it promptly.' " *American Service Insurance Co. v. United Automobile Insurance Co.*, 409 Ill. App. 3d 27, 35 (2011) (quoting *Coregis*, 355 Ill. App. 3d at 167). This court has recognized that the legislature has now "spoken as to the outer limit of what constitutes promptness by imposing a one-year time limit within which an insurer must act to void a policy based upon a material misrepresentation." *Coregis*, 355 Ill. App. 3d at 167, n.4. As stated by the Fourth District, "[s]ection 154 provides an insurance company cannot rescind certain kinds of policies or policy renewals once the policy has been in effect for one year or one policy term, whichever is less, regardless of any misrepresentations, including material misrepresentations, made in the written application for the policy." *Standard Mutual*, 2012 IL App (4th) 110526, ¶ 16.

¶ 52        The facts of *Standard Mutual* are analogous to the instant situation. In that case, Rick and Ruth Jones applied for an automobile liability insurance policy with Standard Mutual in January 2010. *Id.* ¶ 3. Although the application asked Rick and Ruth to identify all residents of their home, they allegedly failed to disclose that their two sons lived with them. *Id.* One of the sons, Tyler, was driving Rick and Ruth's vehicle on July 16, 2010, when it collided with a vehicle occupied by Christina Stephenson and Stephenson's three children. *Id.* ¶ 4. After the accident, Standard Mutual paid sums to Stephenson, as well as to Rick and Ruth. *Id.* Standard Mutual eventually learned that Tyler was a resident of Rick and Ruth's home. *Id.* ¶ 5.

¶ 53        Standard Mutual filed a complaint for rescission against Rick and Ruth, as well as Christina Stephenson and her children. *Id.* Standard Mutual alleged that "it would not have issued the automobile policy in question" if Rick and Ruth had disclosed that Tyler resided with them. *Id.* The Stephensons' answer to the complaint included, as the first affirmative defense, that section

154 barred rescission of the policy. *Id.* ¶ 6. Standard Mutual filed a motion for partial summary judgment with respect to that affirmative defense, and the Stephensons moved for judgment on the pleadings "as to count I of Standard Mutual's complaint for rescission and (2) the Stephensons' first affirmative defense." *Id.* ¶ 7. The trial court granted the Stephensons' motion for judgment on the pleadings. *Id.* ¶ 8.

¶ 54        On appeal, our Fourth District stated that the primary issue was:

> "Did the trial court correctly interpret section 154 of the Insurance
> Code to bar an insurance company from rescinding an automobile
> insurance policy or policy renewal after the policy has been in effect
> for one year or one policy term, whichever is less, where the
> applicants for the insurance policy made material
> misrepresentations to procure coverage or to receive the insurance
> coverage at a lower premium rate?" *Id.* ¶ 11.

¶ 55        The court recognized that "[at] issue is the meaning of the penultimate sentence *** added to section 154 by an amendment effective June 1, 1996 (Pub. Act 89-413, § 5 (eff. June 1, 1996) (1995 Ill. Laws 4368, 4369))." *Id.* ¶ 13. That is, the case depended upon interpretation of the provision that "a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less." 215 ILCS 5/154 (West 2010). The *Standard Mutual* court recognized that, although this provision was mentioned in *Coregis* and *American Service*, resolution of those cases did not turn upon that provision, and so the issue was "one of first impression." *Standard Mutual*, 2012 IL App (4th) 110526, ¶ 14.

¶ 56        In affirming the trial court, the Fourth District reasoned that, since "the policy at issue had been in effect for more than one policy term," under the "plain meaning of section 154, Standard

Mutual could not rescind the policy." *Id.* ¶ 16. The court specifically rejected Standard Mutual's reliance on the principle that an insurer may "rely on the truthfulness of an applicant's answers and has no duty to conduct an independent investigation" into their accuracy. *Id.* ¶ 17. The court explained that,

> "while an insurance company might have no duty to conduct an investigation into the truthfulness of an applicant's answer, if it wishes to rescind certain types of policies based on a misrepresentation in the application for that policy, the plain language of section 154 limits the amount of time in which it can do so. [Citation.]"
>
> *Id.*

¶ 57    The *Standard Mutual* court further explained that, even if the applicants' misrepresentation regarding Tyler's residence was material, section 154 barred rescission "because the policy was in its second term when the accident in question occurred." *Id.* ¶ 18. Furthermore, the court rejected Standard Mutual's argument that it should be permitted to rescind because it "only discovered the misrepresentation after the automobile accident in question." *Id.* ¶ 19. The Fourth District reasoned that, under the "plain language" of the statute, "[t]he effective date of the policy, not the discovery of the misrepresentation, triggers the start of the time period in which an insurer can move to rescind a policy. [Citation.]" *Id.* ¶ 20.

¶ 58    The Fourth District also noted Standard Mutual's policy argument that precluding rescission after one policy period or one year would " 'encourage applicants to provide misrepresentations *** and hope that any misrepresentation is not discovered until the inception of a new policy period or the lapsing of one-year's time from the date of issuance.' " *Id.* ¶ 21. The court responded that, while it was "easy to understand Standard Mutual's claim this statute, as written, can be unfair to insurance companies, that is an argument best made to the Illinois General

Assembly." *Id.* ¶ 22. The Fourth District thus affirmed the trial court because the Code "barred Standard Mutual from rescinding the insurance policy \*\*\* because the policy was no longer in its first term and because all the relief Standard Mutual sought in its complaint resulted from its alleged right to rescind the policy." *Id.* ¶ 23.

¶ 59    *Standard Mutual* is analogous to the instant case. Just as section 154 of the Code prevented rescission of the policy in that case notwithstanding the insured's failure to disclose all household residents, UEIC was time-barred from rescinding its policy, despite Thomas's failure to disclose his use of the insured vehicle for ridesharing.

¶ 60    The parties do not dispute that section 154 encompasses automobile insurance policies such as that issued to Thomas. Thus, the policy could "not be rescinded after the policy has been in effect for one year or one policy term, *whichever is less.*" (Emphasis added.) 215 ILCS 5/154 (West 2016). The policy issued to Thomas had an initial six-month term from March 22 to September 22, 2016, and was twice renewed for six-month terms, in September 2016 and in March 2017. Thus, by the time of the June 2017 collision, the policy had been in effect for more than one policy term—indeed, it had been in effect for more than two terms. Accordingly, it was simply too late for UEIC to rescind the policy on the basis of a misrepresentation by Thomas.

¶ 61    Given this conclusion, many of UEIC's arguments on appeal are irrelevant. In arguing that a ridesharing vehicle is fundamentally different from a strictly personal vehicle and that it never intended to insure this sort of risk, UEIC essentially emphasizes the materiality of Thomas's failure to disclose. However, materiality does not matter if the insurer's attempt to rescind is untimely under the Code. *Standard Mutual*, 2012 IL App (4th) 110526, ¶ 18 (noting that the "materiality of the misrepresentation" is "irrelevant" where section 154 "barred Standard Mutual from rescinding the policy because the policy was in its second term when the accident in question occurred").

¶ 62        UEIC does not identify any authorities to distinguish *Standard Mutual* and devotes little argument to address the time limitation of section 154. UEIC "acknowledges it can't rescind the policy under" the Code but claims that it "does not seek to rescind." Rather, UEIC contends:

> "What UEIC seeks to do is deny a claim where even during the claim and discovery process Thomas continued to (try and) shield the extent of his UBER ridesharing. *** Thomas violated conditions 4 and 20 and misrepresented the nature of his vehicle and this policy was issued, renewed, and maintained on that misrepresentation and Thomas should not be rewarded with coverage."

¶ 63        We are not persuaded by UEIC's contention that it did not seek to "rescind" Thomas's policy. We acknowledge that UEIC did not label its declaratory judgment complaint as one seeking "rescission." However, the "character of [a] pleading should be determined from its content, not its label," and "when analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called." (Internal quotation marks omitted.) *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 64. UEIC's underlying action sought to have Thomas's policy declared void, which our precedent indicates is tantamount to seeking rescission.

¶ 64        This court has stated that

> "[r]escission is defined as:
>
>> To abrogate, annul, avoid, or cancel a contract; particularly, nullifying a contract by the act of a party. The right of rescission is the right to cancel (rescind) a contract upon the occurrence of certain kinds of default ***. To declare a contract void in its inception and to put an end to it as though it never were." (Internal quotation marks omitted.) *People v. Young*, 2013 IL App (1st) 111733, ¶ 47.

See also *Chicago Limousine Service, Inc. v. Hartigan Cadillac, Inc.*, 139 Ill. 2d 216, 225-26 (1990) ("to rescind is to 'declare a contract void in its inception and to put an end to it as though it never were.' " (quoting Black's Law Dictionary 1306 (6th ed. 1990))); *Coregis*, 355 Ill. App. 3d at 165 ("Where a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated. [Citation.]").

¶ 65 Section 154 of the Code governs when an insurance contract " '*may be voided*' " due to a material misrepresentation. (Emphasis in original.) *Coregis*, 355 Ill. App. 3d at 167 (quoting *Golden Rule*, 203 Ill. 2d at 464). That is precisely what UEIC sought to do in this case. Although UEIC asserts various policy arguments as to why it should not owe coverage due to Thomas's misrepresentations, the contractual basis for its position boils down to conditions 4 and 20, which, in turn, indicate that a misrepresentation voids the policy. In particular, condition 4 states:

"This policy is *null and void* *** if any information or omission by you or made on your behalf *** is misrepresented either fraudulently or mistakenly and is material to our decision to issue, renew or change this policy ***. This policy *is null and void* and of no benefit and provides no coverage or benefit to anyone who makes a fraudulent statement or omission ***." (Emphasis added.)

Similarly, condition 20 provided that Thomas's statements were "offered as an inducement to [UEIC] to issue or continue" the policy and that the policy was "issued and continued in reliance upon the truth of such statements and representations."

¶ 66 The record shows that UEIC sought to nullify and rescind the policy based on these conditions. UEIC's May 2018 letter recited conditions 4 and 20 before stating that UEIC was "deny[ing] any and all coverage's [*sic*] related to this loss." UEIC's declaratory judgment

complaint cited conditions 4 and 20 and sought a declaration that, *inter alia*, "this claim is null and void under the policy." UEIC's summary judgment motion also restated conditions 4 and 20 and relied on them to argue that it owed no coverage because Thomas "withheld and materially misrepresented information." Indeed, in its opening brief on appeal, UEIC argues that condition 4 indicates "that *misrepresentations and omissions void coverage* when made in the application, the declarations and the renewal." (Emphasis in original).

¶ 67 In sum, we reject UEIC's suggestion that it did not seek rescission. Rather, UEIC's reliance on conditions 4 and 20 amounts to an attempt to void and rescind the policy due to misrepresentations. An insurer's power to rescind due to a misrepresentation is governed by section 154 of the Code, which imposes a " 'time limit within which an insurer must act to void a policy based upon a material misrepresentation.' " *American Service*, 409 Ill. App. 3d at 36 (quoting *Coregis*, 355 Ill. App. 3d at 167 n.4). Thus, we reject UEIC's attempt to avoid application of the statutory time limit.

¶ 68 We note that the Code's time limitation appears to supersede condition 4, to the limited extent that condition 4 purports to allow UEIC to declare a policy null and void based upon a misrepresentation "material to our decision to *** *renew*" the policy. (Emphasis added.) The Code provides that "a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less." 215 ILCS 5/154 (West 2016). There cannot be a renewal of the policy without the completion of at least one policy term. Thus, to the extent that condition 4 purports to allow rescission based upon a misrepresentation material to UEIC's decision to "renew" (*i.e.*, after more than one policy period), such rescission would be time-barred by the Code, and that application of condition 4 would be unenforceable. See *Schultz v. Illinois*

*Farmers Insurance Co.*, 237 Ill. 2d 391, 400 (2010) ("Terms of an insurance policy that conflict with a statute are void and unenforceable.").

¶ 69    We separately conclude that, even without section 154 of the Code, the substantially identical time limitation language in condition 4 would independently bar UEIC's attempt to rescind Thomas's policy. Condition 4 specified that UEIC "shall not declare this policy void from its inception due to material misrepresentation or false warranty in the application after the policy has been in effect for one year or one policy term, whichever is less."[7] As there is no dispute that the policy issued to Thomas had been in effect for multiple policy terms, UEIC's attempt to void coverage was untimely and barred by the language of condition 4. We thus hold that, to the extent UEIC's declaratory judgment action sought to avoid coverage due to material misrepresentations or omissions, UEIC is simply too late under both the Code and the policy's own language.[8]

¶ 70    In reaching this decision, we recognize (as did the Fourth District in *Standard Mutual*) that strict application of the Code's time limit creates a harsh and arguably unfair result, at least from the insurer's perspective. We acknowledge that there is some appeal to UEIC's argument that Thomas should not be rewarded for misrepresenting or withholding information regarding his use of the insured vehicle. The record suggests that Thomas sought insurance with the intention of using the insured vehicle for ridesharing: he began using the vehicle for ridesharing shortly after he obtained insurance from UEIC, he twice renewed the policy without disclosing his ridesharing, and he continued to make frequent ridesharing trips until shortly before the June 2017 collision.

---

[7]To the extent that the last sentence in condition 4 bars UEIC from declaring a policy void after it has been in effect for more the one policy term, it conflicts with the condition's earlier language suggesting that the policy can be declared null and void due to a misrepresentation material to UEIC's decision to "renew."

[8]In light of this conclusion, we need not address Thomas and Rascoe's alternative argument that any misrepresentation in Thomas's application could not void the policy, insofar as the application submitted on Thomas's behalf was not "attached to" the policy, as that phrase is used in condition 20.

Indeed, it appears that he only disclosed his ridesharing activity after UEIC investigated his claim arising from the collision. We have no reason to dispute UEIC's contentions that a vehicle used for ridesharing has increased risks, or that UEIC would not have issued the policy if Thomas had disclosed his intent to use his vehicle for ridesharing. Certainly, it is reasonable to expect that an insurer would have charged Thomas a higher premium for insurance coverage explicitly encompassing ridesharing. Thus, it does appear that Thomas benefited from his failure to be forthcoming.

¶ 71        We also recognize the difficulties imposed upon insurers by a strict application of the Code's time limit. Insurers have a right to know the risks that they are insuring, and an applicant has the responsibility to accurately disclose information about such risks. See *Brandt v. Time Insurance Co.*, 302 Ill. App. 3d 159, 164 (1998) ("it has long been the law in Illinois that an insurer has no general duty to investigate the truthfulness of answers given to questions on an application for insurance"). In this case, Thomas did not disclose the full extent of the risk involved in insuring his vehicle, but by the time UEIC discovered this, it was too late to rescind the policy.

¶ 72        As a practical matter, we recognize that automobile insurers cannot be expected to undertake an investigation to determine the truth of each representation in every application, including whether the applicant uses the vehicle at issue for ridesharing. By our ruling, we do not mean to impose such a duty. See *id.* (recognizing that "Illinois law imposes no duty on an insurer to conduct an independent investigation of insurability before issuing an insurance policy"). Nevertheless, application of the plain language of the Code means that, in cases such as this, the insurer loses the ability to rescind when it does not learn of the insured's misrepresentation until more than one year or one policy period has elapsed.

¶ 73        We do not opine on whether this result is fair or equitable. At the same time, we do not mean to dismiss the validity of the concerns raised by UEIC in this case. However, as our Fourth District recognized, this court is constrained to apply the plain language of the Code as written. Thus, to the extent that UEIC and other insurers find that application of the statute leads to unfair results, we echo the Fourth District's advice that their concerns are more properly directed toward the legislature. See *Standard Mutual*, 2012 IL App (4th) 110526, ¶ 22 ("While it is easy to understand Standard Mutual's claim this statute, as written, can be unfair to insurance companies, that is an argument best made to the Illinois General Assembly.").

¶ 74        Given our conclusion that UEIC was time-barred from rescinding the policy, we have no need to resolve UEIC's argument that ridesharing is an activity whose risk was "qualitatively and quantitatively different" from the risks contemplated by a "small, family personal automobile insurance policy." However, it is apparent that UEIC could have drafted the policy more clearly, if it wished to make explicit that it did not intend to cover risks from ridesharing. Insurers, as the drafters of their policies, are empowered to select terms that are clear and unambiguous about the precise risks that are covered or excluded. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 117 (1992) ("If the insurer had desired to restrict coverage to only those suits seeking legal, compensatory damages, it could have easily included among its exclusionary provisions an exclusion pertaining to the costs of complying with mandatory injunctions."). Indeed, the insurer's power to draft the policy is a primary reason for the rule that ambiguous policy terms are construed in favor of coverage. See *Smith v. Allstate Insurance Co.*, 312 Ill. App. 3d 246, 254 (1999) (explaining that the reason for the rule is "twofold: (1) the intent of an insured in purchasing an insurance policy is to obtain coverage, and therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent; and (2) *the insurer is the*

*drafter of the policy and could have drafted the ambiguous provision clearly and specifically.* [Citation.]" (Emphasis in original.)).

¶ 75    As drafter, UEIC could have explicitly stated in its policy that coverage did not extend to a vehicle used for ridesharing.[9] We recognize that a third party, Insure, told Thomas that the insured vehicle should not be used for ridesharing services. Inexplicably, however, UEIC's policy never used the term "ridesharing" or referenced Uber or similar services. Given the popularity of ridesharing services over the past several years, it is difficult to see why UEIC did not modify its policy to include explicit language explaining what coverage (if any) extended to vehicles used for ridesharing. Just as insurers may explicitly exclude coverage for certain activities, insurers are equally empowered to draft policies that explicitly contemplate coverage for ridesharing. That is, careful drafting could differentiate between policies that simply cover risks from purely personal use of a vehicle and policies that cover a vehicle used for ridesharing. In this manner, insurers such as UEIC might avoid some coverage disputes related to ridesharing.

¶ 76    Notwithstanding the above-mentioned concerns, we emphasize the limited nature of our holding. We simply conclude that UEIC is time-barred from rescinding the policy, regardless of the materiality of Thomas's misrepresentations and omissions. We are not deciding whether any of the purported misrepresentations or omissions are material. Similarly, we need not decide whether a ridesharing vehicle is equivalent to a commercial vehicle or the other policy-related questions raised by UEIC's briefing.

¶ 77    Although we conclude that UEIC was time-barred from rescinding the policy, that conclusion does not complete our analysis of whether the trial court correctly determined that

---

[9]Although parts III and IV of the policy contain exclusions pertaining to use of an insured vehicle as a "public livery or conveyance," the policy does not define those terms.

Thomas and Rascoe were entitled to summary judgment. In addition to holding that UEIC could not rescind the policy, the trial court also concluded that the exclusions in parts III and IV did not bar coverage because "Thomas was not using his vehicle as a public livery or conveyance at the time of the accident."

¶ 78     On appeal, UEIC suggests that (apart from the effect of Thomas's misrepresentations), it did not owe coverage due to the "public livery or conveyance" exclusion in part IV. Notably, whereas the trial court's order discussed the exclusions in both parts III and IV, UEIC raises no argument regarding the exclusion in part III.[10] Thus, UEIC has forfeited any challenge to the trial court's ruling regarding the exclusion in part III. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). However, "forfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent. [Citation.]" *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65. We elect to overlook UEIC's forfeiture regarding the exclusion in part III, especially since the language of both exclusions at issue is substantially identical, including the key phrase "while used as a public livery or conveyance."

¶ 79     Turning to the merits, Thomas and Rascoe initially contend that the exclusions cannot apply because their "underlying claim is brought solely under the uninsured motorist coverage (part II), not under medical pay[ments] (part III), or physical damage (part IV)." That is, they argue that they did not make a claim under either part III or part IV, and so the exclusions therein cannot bar coverage. Alternatively, Thomas and Rascoe argue that the exclusions' phrase "while used as

---

[10]UEIC's opening brief states incorrectly that the trial court's order "only focused on one issue which was the Exclusion of [p]art IV," apparently overlooking that the trial court also recited the exclusion in part III.

a public livery or conveyance" is ambiguous and must be construed narrowly to mean that coverage is excluded only if the vehicle was being used as "public livery" at the specific moment the crash occurred.

¶ 80        As explained below, the record does not show that Thomas and Rascoe made any claim under either part III or part IV of the policy. Thus, we agree with them that the "public livery or conveyance" exclusions in those parts are not applicable.

¶ 81        "[T]o support a claim of error, the appellant has the burden to present a sufficiently complete record." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005) (citing *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001)). " 'Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.' " *Id.* at 157 (quoting *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)); *Teton, Tack & Feed, LLC. v. Jimenez*, 2016 IL App (1st) 150584, ¶ 19 ("[W]here any doubts arise from an ambiguity within the record, the reviewing court must resolve those issues against the appellant. [Citation.]").

¶ 82        UEIC, as appellant, is responsible for providing record support for its contention that coverage was excluded. However, on the record before us, there is no indication that Thomas and Rascoe did, in fact, make a claim for coverage under either part III or part IV of the policy.

¶ 83        Although the record includes certain communications between UEIC and Thomas after the June 2017 accident, there is no claim form from Thomas. None of the communications in the record specify under what part(s) of the policy he claimed coverage. Further, UEIC's filings in the trial court failed to allege that any claim for coverage was made under part III or IV. In its declaratory judgment complaint, UEIC alleged that Thomas and Rascoe made "Uninsured Motorist claims," suggesting only that part II of the policy was implicated. Although the complaint elsewhere referenced the "public or livery conveyance" exclusions in part III and part IV, UEIC

simply did not plead that Thomas and Rascoe made claims for medical payments under part III or claims for physical damage under part IV. Similarly, in the factual background portion of its motion for summary judgment, UEIC stated that "Thomas made a claim" but did not specify the type of claim.

¶ 84   UEIC's submissions to this court similarly provide no support for application of the exclusions in parts III or IV. The statement of facts in UEIC's opening brief recites that Thomas and Rascoe "filed a collision (Part IV) claim against UEIC and other Part II (uninsured motorist) claims for uninsured motorist coverage" but fails to provide any corresponding citation of the appellate record. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (appellant's statement of facts "shall contain the facts necessary to an understanding of the case *** with appropriate reference to the pages of the record on appeal").

¶ 85   In sum, although UEIC repeatedly cited the "public livery or conveyance" exclusions in part III and IV in communications to Thomas and trial court filings, nothing in the record suggests that Thomas or Rascoe ever asserted claims for coverage under those parts of the policy. As doubts from gaps in the record are resolved against the appellant (*Foutch*, 99 Ill. 2d at 392), we presume that Thomas and Rascoe did not make a claim for coverage under parts III or IV. Rather, the record supports Thomas and Rascoe's contention that their underlying claim was brought solely under part II's uninsured motorist coverage, which does not contain any "public livery or conveyance" exclusion.

¶ 86   As the record does not show that any claim was ever made under parts III or IV, the exclusions in those parts are plainly inapplicable and could not bar coverage. For that reason, we may affirm without discussing whether the trial court correctly found that the exclusions were unambiguous and that Thomas's vehicle was not being used as a "public livery or conveyance" at

the time of the accident. See *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16 (a reviewing court can affirm a lower court on any grounds that are called for by the record, regardless of whether the lower court relied on those grounds).

¶ 87    In summary, we agree with the trial court that UEIC's attempt to rescind the policy was untimely under section 154 of the Code and similar language of condition 4. We also find that the policy's exclusions in part III and IV barring coverage for an automobile "while used as a public or livery conveyance" are inapplicable, because the record does not show that Thomas or Rascoe sought coverage under those parts of the policy. For these reasons, we affirm the trial court's order denying UEIC's motion for summary judgment and granting Thomas and Rascoe's cross-motion for summary judgment.

¶ 88                                     CONCLUSION

¶ 89    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 90    Affirmed.

---

**No. 1-20-1122**

---

| | |
|---|---|
| **Cite as:** | *United Equitable Insurance Co. v. Thomas*, 2021 IL App (1st) 201122 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-00668; the Hon. Neil H. Cohen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Samuel A. Shelist, of Shelist & Peña LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard Lee Stavins and Diana H. Psarras, of Robbins, Salomon & Patt, Ltd., of Chicago, for appellees. |

---